# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**　　　**2. PLEASE TYPE OR PRINT**　　　**3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| Bandy Lee v. Yale University | Connecticut | Sarah A.L. Merriam |

| | Date the Order or Judgment Appealed from was Entered on the Docket: | District Court Docket No.: |
|---|---|---|
| | 08/30/2022 | 3:21cv00389(SALM) |

| | Date the Notice of Appeal was Filed: | Is this a Cross Appeal? |
|---|---|---|
| | 10/06/2022 | ☐ Yes　☑ No |

| **Attorney(s) for Appellant(s):**<br>☑ Plaintiff<br>☐ Defendant | Counsel's Name:　　Address:　　Telephone No.:　　Fax No.:　　E-mail:<br><br>Todd Steigman, 402 Asylum Street, Hartford, CT 06103<br>Tele: (860) 246-2466; Fax (860) 246-1794; Email TSteigman@mppjustice.com |
|---|---|

| **Attorney(s) for Appellee(s):**<br>☐ Plaintiff<br>☑ Defendant | Counsel's Name:　　Address:　　Telephone No.:　　Fax No.:　　E-mail:<br><br>Jonathan Freiman, P.O. Box 1832, New Haven, CT 06508<br>Tele: (203) 498-4400; Fax (203) 782-2889; Email JFreiman@wiggin.com |
|---|---|

| Has Transcript Been Prepared?<br>No | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously? ☐ Yes ☑ No<br><br>If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:　　Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

*ADDENDUM "A"*: **COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.**

*ADDENDUM "B"*: **COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.**

### PART A: JURISDICTION

| 1. Federal Jurisdiction | | 2. Appellate Jurisdiction | |
|---|---|---|---|
| ☐ U.S. a party | ☑ Diversity | ☑ Final Decision | ☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b)) |
| ☑ Federal question (U.S. not a party) | ☐ Other (specify): _____ | ☐ Interlocutory Decision Appealable As of Right | ☐ Other (specify): _____ |

### IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.

**FORM C** (Rev. October 2016)

**PART B: DISTRICT COURT DISPOSITION** (Check as many as apply)

| 1. Stage of Proceedings | 2. Type of Judgment/Order Appealed | 3. Relief |
|---|---|---|
| ☑ Pre-trial<br>☐ During trial<br>☐ After trial | ☐ Default judgment<br>☐ Dismissal/FRCP 12(b)(1)<br> lack of subject matter juris.<br>☑ Dismissal/FRCP 12(b)(6)<br> failure to state a claim<br>☐ Dismissal/28 U.S.C. § 1915(e)(2)<br> frivolous complaint<br>☐ Dismissal/28 U.S.C. § 1915(e)(2)<br> other dismissal | ☐ Dismissal/other jurisdiction<br>☐ Dismissal/merit<br>☐ Judgment / Decision of the Court<br>☐ Summary judgment<br>☐ Declaratory judgment<br>☐ Jury verdict<br>☐ Judgment NOV<br>☐ Directed verdict<br>☐ Other (specify): | ☑ Damages:<br> ☐ Sought: $ _____<br> ☐ Granted: $ _____<br> ☐ Denied: $ _____<br><br>☑ Injunctions:<br> ☐ Preliminary<br> ☐ Permanent<br> ☐ Denied |

**PART C: NATURE OF SUIT** (Check as many as apply)

| 1. Federal Statutes | | | 2. Torts | 3. Contracts | 4. Prisoner Petitions |
|---|---|---|---|---|---|
| ☐ Antitrust<br>☐ Bankruptcy<br>☐ Banks/Banking<br>☐ Civil Rights<br>☐ Commerce<br>☐ Energy<br>☐ Commodities<br>☐ Other (specify): _____ | ☐ Communications<br>☐ Consumer Protection<br>☐ Copyright ☐ Patent<br>☐ Trademark<br>☐ Election<br>☐ Soc. Security<br>☐ Environmental | ☐ Freedom of Information Act<br>☐ Immigration<br>☐ Labor<br>☐ OSHA<br>☐ Securities<br>☐ Tax | ☐ Admiralty/<br> Maritime<br>☐ Assault /<br> Defamation<br>☐ FELA<br>☐ Products Liability<br>☐ Other (Specify): | ☐ Admiralty/<br> Maritime<br>☐ Arbitration<br>☐ Commercial<br>☑ Employment<br>☐ Insurance<br>☐ Negotiable<br> Instruments<br>☐ Other Specify | ☐ Civil Rights<br>☐ Habeas Corpus<br>☐ Mandamus<br>☐ Parole<br>☐ Vacate Sentence<br>☐ Other |

| 5. Other | 6. General | 7. Will appeal raise constitutional issue(s)? |
|---|---|---|
| ☐ Hague Int'l Child Custody Conv.<br>☐ Forfeiture/Penalty<br>☐ Real Property<br>☐ Treaty (specify): _____<br>☐ Other (specify): _____ | ☐ Arbitration<br>☐ Attorney Disqualification<br>☐ Class Action<br>☐ Counsel Fees<br>☐ Shareholder Derivative<br>☐ Transfer | ☐ Yes ☑ No<br><br>Will appeal raise a matter of first impression?<br><br>☑ Yes ☐ No |

1. Is any matter relative to this appeal still pending below? ☐ Yes, specify: _____ ☑ No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

    (A)  Arises from substantially the same case or controversy as this appeal? ☐ Yes ☑ No

    (B)  Involves an issue that is substantially similar or related to an issue in this appeal? ☐ Yes ☑ No

If yes, state whether ☐ "A," or ☐ "B," or ☐ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| Name of Appellant: | | | |

| Date: 10/19/2022 | Signature of Counsel of Record: *Todd Steigman* |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C** (Rev. December 2016)

**ADDENDUM "A" TO FORM C**

This is an employment case brought by Plaintiff Bandy Lee ("Plaintiff")
against her former employer, Yale University ("Defendant"). For seventeen years,
from 2003 until 2020, Plaintiff held a faculty appointment with Defendant. She
served as a faculty member of the Law and Psychiatry Division at Yale School of
Medicine, and also taught courses at Yale Law School. Plaintiff claims that
Defendant terminated her employment and her faculty appointment in 2020 in
violation of an express and implied contract pursuant to which Defendant
guaranteed protections for academic freedom and free expression as a right and
privilege at Yale, and that Defendant also retaliated against Plaintiff in violation of
Section 31-51q of the Connecticut General Statutes because she engaged in
constitutionally protected speech on matters of public concern.

On August 30, 2022, the District Court granted Defendant's motion to
dismiss under Rule 12(b)(6) and entered judgment in favor of Defendant. (Doc.
Nos. 42, 43.) The District Court held that Plaintiff failed to state a claim for a
breach of implied contract, and that in the absence of a contract, Plaintiff's claim
for breach of the covenant of good faith and fair dealing must also be dismissed.
The District Court also held that Plaintiff failed to state a claim under Conn. Gen.
Stat. § 31-51q because Plaintiff failed to sufficiently allege that she was an
employee under the "remuneration test" which the Court used to control the

meaning of "employee" under the statute. The District Court also dismissed

Plaintiff's claim for negligent misrepresentation. (Doc. No. 42.) In accordance

with its Ruling granting Defendant's motion to dismiss, the Court entered

judgment in favor of Defendant. (Doc. No. 43.) On October 6, 2022, the District

Court denied Plaintiff's motion seeking leave to file a motion for reconsideration.

(Doc. No. 58.) On that same date, well in advance of the October 17, 2022,

deadline established by the District Court (Doc. No. 55), Plaintiff filed her notice

of appeal. (Doc. No. 59.)

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **BANDY LEE,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO.** |
| | : | **3:21-cv-00389 (SALM)** |
| **v.** | : | |
| | : | |
| **YALE UNIVERSITY,** | : | |
| **Defendant.** | : | |
| | : | **OCTOBER 6, 2022** |

### NOTICE OF APPEAL

Notice is hereby given that BANDY LEE, Plaintiff in the above-named case, hereby

appeals to the United States Court of Appeals for the Second Circuit from each and every part of

the final judgment (Doc. No. 43) entered in this action on the 30th day of August 2022, including

the Court's Ruling granting Defendant's Motion to Dismiss, dated August 30, 2022 (Doc No.

42), and the Court's Order, dated October 6, 2022 (Doc. No. 58).

**PLAINTIFF,**
**BANDY LEE**

BY: /s/ Todd Steigman
    Todd Steigman (ct26875)
    Madsen, Prestley & Parenteau, LLC
    402 Asylum Street
    Hartford, CT  06103
    Tel: (860) 246-2466
    Fax: (860) 246-1794
    Email: TSteigman@mppjustice.com
    HER ATTORNEY

**CERTIFICATION**

I hereby certify that on October 6, 2022 a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Todd Steigman*

APPEAL,CLOSED,EFILE

## U.S. District Court
## District of Connecticut (New Haven)
## CIVIL DOCKET FOR CASE #: 3:21-cv-00389-SALM

Lee v. Yale University
Assigned to: Judge Sarah A. L. Merriam
Cause: No cause code entered

Date Filed: 03/22/2021
Date Terminated: 08/30/2022
Jury Demand: Plaintiff
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**Bandy Lee**
*MD, MDiv*

represented by **Jacques J. Parenteau**
Madsen, Prestley & Parenteau, LLC-NL
105 Huntington St., PO Box 1631
New London, CT 06320
860-442-2466
Fax: 860-447-9206
Email: jparenteau@mppjustice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robin B. Kallor**
Rose Kallor, LLP
750 Main Street
Suite 309
Hartford, CT 06103
860-361-7999
Fax: 860-270-0710
Email: rkallor@rosekallor.com
*TERMINATED: 09/21/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Todd D. Steigman**
Madsen, Prestley & Parenteau, LLC-HTFD
402 Asylum Street
Hartford, CT 06103
860-246-2466
Fax: 860-246-1794
Email: tsteigman@mppjustice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cindy M. Cieslak**
Rose Kallor, LLP
750 Main Street
Suite 309
Hartford, CT 06103
860-361-7999
Fax: 860-270-0710
Email: ccieslak@rosekallor.com
*TERMINATED: 09/21/2022*
*ATTORNEY TO BE NOTICED*

**Melinda A. Powell**
Rose Kallor, LLP
750 Main Street
Suite 309
Hartford, CT 06103
860-361-7999
Fax: 860-270-0710
Email: mpowell@rosekallor.com

*TERMINATED: 09/21/2022*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Yale University**                                   represented by **Caroline B Park**
Wiggin & Dana-NH
265 Church St.
P.O. Box 1832
New Haven, CT 06510
203-498-4317
Fax: 203-782-2889
Email: cpark@wiggin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Freiman**
Wiggin and Dana LLP
One Century Tower
Wiggin and Dana LLP
265 Church Street
New Haven, CT 06510
203-498-4400
Email: jfreiman@wiggin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/22/2021 | 1 | COMPLAINT against Yale University ( Filing fee $402 receipt number ACTDC-6440443.), filed by Bandy Lee. (Kallor, Robin) (Entered: 03/22/2021) |
| 03/22/2021 | 2 | EXHIBIT *Civil Cover Sheet* by Bandy Lee re 1 Complaint. (Kallor, Robin) (Entered: 03/22/2021) |
| 03/22/2021 | | Judge Michael P. Shea added. (Nuzzi, Tiffany) (Entered: 03/22/2021) |
| 03/22/2021 | 3 | Order on Pretrial Deadlines: Amended Pleadings due by 5/21/2021. Discovery due by 9/21/2021. Dispositive Motions due by 10/26/2021. Signed by Clerk on 03/22/2021. (Peterson, M) (Entered: 03/22/2021) |
| 03/22/2021 | 4 | ELECTRONIC FILING ORDER FOR COUNSEL - PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER Signed by Judge Michael P. Shea on 03/22/2021. (Peterson, M) (Entered: 03/22/2021) |
| 03/22/2021 | 5 | STANDING PROTECTIVE ORDER Signed by Judge Michael P. Shea on 03/22/2021. (Peterson, M) (Entered: 03/22/2021) |
| 03/22/2021 | 6 | Notice re Initial Discovery Protocols Signed by Clerk on 03/22/2021. (Attachments: # 1 Initial Discovery Protocols Attachment) (Peterson, M) (Entered: 03/22/2021) |
| 03/22/2021 | 7 | NOTICE TO COUNSEL/SELF-REPRESENTED PARTIES : Counsel or self-represented parties initiating or removing this action are responsible for serving all parties with attached documents and copies of 5 Protective Order, 4 Electronic Filing Order, 2 Exhibit filed by Bandy Lee, 1 Complaint filed by Bandy Lee, 3 Order on Pretrial Deadlines, 6 Notice Signed by Clerk on 03/22/2021. (Peterson, M) (Entered: 03/22/2021) |
| 03/23/2021 | 8 | NOTICE of Appearance by Cindy M. Cieslak on behalf of Bandy Lee (Cieslak, Cindy) (Entered: 03/23/2021) |
| 03/23/2021 | 9 | NOTICE of Appearance by Melinda A. Powell on behalf of Bandy Lee (Powell, Melinda) (Entered: 03/23/2021) |
| 04/19/2021 | 10 | WAIVER OF SERVICE Returned Executed as to Yale University waiver sent on 3/22/2021, answer due 5/21/2021 filed by Bandy Lee. (Kallor, Robin) (Entered: 04/19/2021) |
| 05/11/2021 | 11 | NOTICE of Appearance by Jonathan M. Freiman on behalf of Yale University (Freiman, Jonathan) (Entered: 05/11/2021) |
| 05/11/2021 | 12 | NOTICE of Appearance by Caroline B Park on behalf of Yale University (Park, Caroline) (Entered: 05/11/2021) |
| 05/11/2021 | 13 | Consent MOTION for Extension of Time until June 11, 2021 to Answer or Otherwise Respond to 1 Complaint by Yale University. (Freiman, Jonathan) (Entered: 05/11/2021) |

| 05/12/2021 | 14 | ORDER. The 13 motion for extension is hereby GRANTED. Defendant shall file a responsive pleading by **June 11, 2021**. <br><br> Signed by Judge Michael P. Shea on 5/12/2021. (Super, John) (Entered: 05/12/2021) |
|---|---|---|
| 05/12/2021 | | Answer deadline updated for Yale University to 6/11/2021. (Johnson, D.) (Entered: 05/13/2021) |
| 06/11/2021 | 15 | MOTION to Dismiss *Plaintiff's Complaint* by Yale University.Responses due by 7/2/2021 (Attachments: # 1 Memorandum in Support of Defendant's Motion to Dismiss Plaintiff's Complaint, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G)(Freiman, Jonathan) (Entered: 06/11/2021) |
| 06/11/2021 | 16 | Corporate Disclosure Statement by Yale University. (Freiman, Jonathan) (Entered: 06/11/2021) |
| 06/14/2021 | 17 | ORDER. Defendant has filed a 15 Motion to Dismiss. On or before **July 2, 2021**, Plaintiff shall either file a response to the motion or file an amended complaint in which it pleads as many facts as possible, consistent with Rule 11, to address the alleged defects discussed in Defendant's memorandum of law. The Court will not allow further amendments after **July 2, 2021**. If Plaintiff chooses to amend and if Defendant renews its motion to dismiss, Defendant may incorporate by reference any prior briefing. <br><br> Signed by Judge Michael P. Shea on 6/14/2021. (Super, John) (Entered: 06/14/2021) |
| 06/14/2021 | | Set Deadlines as to 15 MOTION to Dismiss *Plaintiff's Complaint*.(Responses due by 7/2/2021, ) or ( Amended Complaint due by 7/2/2021) (Johnson, D.) (Entered: 06/15/2021) |
| 06/16/2021 | 18 | MOTION for Extension of Time until August 2, 2021 *to* file an Amended Complaint or oppose or otherwise Respond to Defendant's Motion to Dismiss by Bandy Lee. (Kallor, Robin) (Entered: 06/16/2021) |
| 06/17/2021 | 19 | ORDER. The 18 motion for extension is hereby GRANTED. Plaintiff's deadline to file an amended complaint or response to the 15 motion to dismiss is **August 2, 2021**. <br><br> Signed by Judge Michael P. Shea on 6/17/2021. (Super, John) (Entered: 06/17/2021) |
| 06/17/2021 | | Set Deadlines as to 15 MOTION to Dismiss *Plaintiff's Complaint*.(Responses due by 8/2/2021, ),or ( Amended Complaint due by 8/2/2021) (Johnson, D.) (Entered: 06/17/2021) |
| 06/24/2021 | 20 | REPORT of Rule 26(f) Planning Meeting. (Kallor, Robin) (Entered: 06/24/2021) |
| 06/25/2021 | 21 | MOTION to Stay *Discovery Pending Ruling on Motion to Dismiss* by Yale University.Responses due by 7/16/2021 (Attachments: # 1 Exhibit A)(Freiman, Jonathan) (Entered: 06/25/2021) |
| 07/09/2021 | 22 | OBJECTION re 21 MOTION to Stay *Discovery Pending Ruling on Motion to Dismiss* filed by Bandy Lee. (Cieslak, Cindy) (Entered: 07/09/2021) |
| 07/22/2021 | 23 | Memorandum in Support re 21 MOTION to Stay *Discovery Pending Ruling on Motion to Dismiss Reply Memorandum in Further Support of 21* filed by Yale University. (Freiman, Jonathan) (Entered: 07/22/2021) |
| 07/23/2021 | 24 | MOTION for Extension of Time to File Response/Reply *or file an Amended Complaint* as to 15 MOTION to Dismiss *Plaintiff's Complaint* until August 23, 2021 by Bandy Lee. (Cieslak, Cindy) (Entered: 07/23/2021) |
| 07/29/2021 | 25 | ORDER. The 24 motion for extension is hereby GRANTED. Plaintiff's deadline to respond to Defendant's motion to dismiss or to file an amended complaint is now **August 23, 2021**. <br><br> Signed by Judge Michael P. Shea on 7/29/2021. (Silva, Madeline) (Entered: 07/29/2021) |
| 07/29/2021 | | Reset deadline as to 15 MOTION to Dismiss Plaintiff's Complaint: Response or amended complaint is now due by 8-23-2021 per Dkt. 25 Order. (Shafer, J.) (Entered: 07/29/2021) |
| 08/10/2021 | 26 | ORDER. The 21 motion to stay discovery pending the Court's ruling on the motion to dismiss is hereby GRANTED. Should the Court deny the motion to dismiss (in whole or in part), the parties shall file a revised Rule 26(f) Report within 14 days of the Court's ruling. <br><br> Signed by Judge Michael P. Shea on 8/10/2021. (Silva, Madeline) (Entered: 08/10/2021) |
| 08/21/2021 | 27 | AMENDED COMPLAINT against Yale University, filed by Bandy Lee.(Cieslak, Cindy) (Entered: 08/21/2021) |
| 08/26/2021 | 28 | Consent MOTION for Extension of Time until September 17, 2021 to Respond to 27 Amended Complaint by Yale University. (Park, Caroline) (Entered: 08/26/2021) |
| 08/27/2021 | 29 | ORDER. In light of the plaintiff's filing of an amended complaint, the 15 motion to dismiss is DENIED AS MOOT. In addition the 28 motion to extend is GRANTED. The defendant's deadline to respond to the amended complaint or to renew its motion to dismiss is **September 17, 2021**. <br><br> Signed by Judge Michael P. Shea on 8/27/2021. (Silva, Madeline) (Entered: 08/27/2021) |
| 08/27/2021 | | Answer deadline updated for Yale University to 9/17/2021. (Johnson, D.) (Entered: 08/30/2021) |

| 09/13/2021 | 30 | Consent MOTION for Leave to File Excess Pages *re their Motion to Dismiss* by Yale University. (Freiman, Jonathan) (Entered: 09/13/2021) |
| 09/14/2021 | 31 | ORDER. The 30 motion for leave to file excess pages is hereby GRANTED.<br><br>Signed by Judge Michael P. Shea on 9/14/2021. (Silva, Madeline) (Entered: 09/14/2021) |
| 09/17/2021 | 32 | MOTION to Dismiss *Plaintiff's Amended Complaint* 27 by Yale University.Responses due by 10/8/2021 (Attachments: # 1 Memorandum in Support of Motion to Dismiss Plaintiff's Amended Complaint, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H)(Freiman, Jonathan) (Entered: 09/17/2021) |
| 09/23/2021 | 33 | Consent MOTION for Extension of Time until November 8, 2021 to Respond to Defendant's Motion to Dismiss by Bandy Lee. (Cieslak, Cindy) (Entered: 09/23/2021) |
| 09/28/2021 | 34 | ORDER. The 33 motion for extension is hereby GRANTED, as follows: The plaintiff's deadline to respond to the defendant's motion to dismiss is now **November 8, 2021**.<br><br>Signed by Judge Michael P. Shea on 9/28/2021. (Silva, Madeline) (Entered: 09/28/2021) |
| 09/28/2021 | | Set Deadlines as to 32 MOTION to Dismiss *Plaintiff's Amended Complaint* 27 . Responses due by 11/8/2021 (Johnson, D.) (Entered: 09/28/2021) |
| 11/08/2021 | 35 | Memorandum in Opposition re 32 MOTION to Dismiss *Plaintiff's Amended Complaint* 27 filed by Bandy Lee. (Powell, Melinda) (Entered: 11/08/2021) |
| 11/12/2021 | 36 | Consent MOTION for Extension of Time until December 13, 2021 to Reply to 35 Memorandum in Opposition to Motion by Yale University. (Freiman, Jonathan) (Entered: 11/12/2021) |
| 11/15/2021 | 37 | ORDER. The 36 motion for extension is hereby GRANTED, as follows: the defendant shall file its reply brief in further support of its motion to dismiss by **December 13, 2021**.<br><br>Signed by Judge Michael P. Shea on 11/15/2021. (Silva, Madeline) (Entered: 11/15/2021) |
| 11/15/2021 | | Set Deadlines as to 32 MOTION to Dismiss *Plaintiff's Amended Complaint* 27 . Responses due by 12/13/2021 (Johnson, D.) (Entered: 11/16/2021) |
| 12/13/2021 | 38 | REPLY to Response to 32 MOTION to Dismiss *Plaintiff's Amended Complaint* 27 Reply in Further Support of *Defendant's Motion to Dismiss Plaintiff's Amended Complaint* filed by Yale University. (Freiman, Jonathan) (Entered: 12/13/2021) |
| 12/22/2021 | 39 | ORDER OF TRANSFER. Case reassigned to Judge Sarah A. L. Merriam for all further proceedings. Signed by Clerk on 12/22/2021.(Hushin, Z.) (Entered: 12/22/2021) |
| 08/04/2022 | 40 | MOTION for To Lift Stay of Discovery Order by Bandy Lee. (Attachments: # 1 Memorandum in Support, # 2 Affidavit)(Cieslak, Cindy) (Entered: 08/04/2022) |
| 08/25/2022 | 41 | Memorandum in Opposition re 40 MOTION for To Lift Stay of Discovery Order filed by Yale University. (Attachments: # 1 Exhibit A)(Freiman, Jonathan) (Entered: 08/25/2022) |
| 08/30/2022 | 42 | RULING. For the reasons set forth in the attached Ruling, defendant's Motion to Dismiss (Doc. # 32 ) is **GRANTED**. The Clerk shall close this case. It is so ordered. Signed by Judge Sarah A. L. Merriam on 8/30/2022. (Teague, J.) (Entered: 08/30/2022) |
| 08/30/2022 | 43 | JUDGMENT entered in favor of Yale University against Bandy Lee.<br><br>For Appeal Forms please go to the following website: http://www.ctd.uscourts.gov/forms/all-forms/appeals_forms Signed by Clerk on 8/30/2022.(Caffrey, A.) (Entered: 08/30/2022) |
| 08/30/2022 | | JUDICIAL PROCEEDINGS SURVEY - FOR COUNSEL ONLY: The following link to the confidential survey requires you to log into CM/ECF for SECURITY purposes. Once in CM/ECF you will be prompted for the case number. Although you are receiving this survey through CM/ECF, it is hosted on an independent website called SurveyMonkey. Once in SurveyMonkey, the survey is located in a secure account. The survey is not docketed and it is not sent directly to the judge. To ensure anonymity, completed surveys are held up to 90 days before they are sent to the judge for review. We hope you will take this opportunity to participate, please click on this link:<br><br>https://ecf.ctd.uscourts.gov/cgi-bin/Dispatch.pl?survey<br>(Caffrey, A.) (Entered: 08/30/2022) |
| 09/19/2022 | 44 | NOTICE of Appearance by Todd D. Steigman on behalf of Bandy Lee (Steigman, Todd) (Entered: 09/19/2022) |
| 09/19/2022 | 45 | NOTICE of Appearance by Jacques J. Parenteau on behalf of Bandy Lee (Parenteau, Jacques) (Entered: 09/19/2022) |
| 09/19/2022 | 46 | Emergency MOTION For Permission to File Motion for Reconsideration, Nunc Pro Tunc by Bandy Lee.Responses due by 9/29/2022 (Steigman, Todd) Modified text to reflect revised response deadline per Order #50 on 9/20/2022 (Caffrey, |

| | | A.). (Entered: 09/19/2022) |
|---|---|---|
| 09/20/2022 | 47 | MOTION for Robin B. Kallor to Withdraw as Attorney by Bandy Lee. (Kallor, Robin) (Entered: 09/20/2022) |
| 09/20/2022 | 48 | MOTION for Cindy M. Cieslak to Withdraw as Attorney by Bandy Lee. (Cieslak, Cindy) (Entered: 09/20/2022) |
| 09/20/2022 | 49 | MOTION for Melinda A. Powell to Withdraw as Attorney by Bandy Lee. (Powell, Melinda) (Entered: 09/20/2022) |
| 09/20/2022 | 50 | ORDER. Plaintiff has filed an "Emergency Motion for Leave to File Motion for Reconsideration Nunc Pro Tunc[.]" Doc. # 46 at 1. Defendant shall file any response to the motion on or before **September 29, 2022**. It is so ordered. Signed by Judge Sarah A. L. Merriam on 09/20/2022. (Powers, L.) (Entered: 09/20/2022) |
| 09/20/2022 | | Reset Deadlines as to 46 Emergency MOTION For Permission to File Motion for Reconsideration, Nunc Pro Tunc. Responses due by 9/29/2022. (Powers, L.) (Entered: 09/20/2022) |
| 09/20/2022 | 51 | MOTION for Extension of Time until October 29, 2022 To File Notice of Appeal by Bandy Lee. (Steigman, Todd) (Entered: 09/20/2022) |
| 09/21/2022 | 52 | ORDER granting 47 Motion for Robin B. Kallor to Withdraw as Attorney. The appearance of Attorney Robin B. Kallor is hereby terminated. It is so ordered. Signed by Judge Sarah A. L. Merriam on 09/21/2022. (Powers, L.) (Entered: 09/21/2022) |
| 09/21/2022 | 53 | ORDER granting 48 Motion for Cindy M. Cieslak to Withdraw as Attorney. The appearance of Attorney Cindy M. Cieslak is hereby terminated. It is so ordered. Signed by Judge Sarah A. L. Merriam on 09/21/2022. (Powers, L.) (Entered: 09/21/2022) |
| 09/21/2022 | 54 | ORDER granting 49 Motion for Melinda A. Powell to Withdraw as Attorney. The appearance of Attorney Melinda A. Powell is hereby terminated. It is so ordered. Signed by Judge Sarah A. L. Merriam on 09/21/2022. (Powers, L.) (Entered: 09/21/2022) |
| 09/21/2022 | 55 | ORDER granting, in part, and denying, in part, over objection 51 MOTION for Extension of Time until October 29, 2022 To File Notice of Appeal. Plaintiff moves "for a thirty-day extension of time, until October 29, 2022, to file a notice of appeal." Doc. # 51 at 1. Defendant objects. The Court finds that the need for the Court to address the (untimely) motion for reconsideration provides good cause for a limited extension, and that no significant prejudice to defendant will result from such an extension.<br>Plaintiff shall file any Notice of Appeal on or before **October 17, 2022**. The Court does not anticipate granting further extensions of this deadline. It is so ordered. Signed by Judge Sarah A. L. Merriam on 09/21/2022. (Powers, L.) (Entered: 09/21/2022) |
| 09/22/2022 | 56 | Memorandum in Opposition *Nunc Por Tunc* re 46 Emergency MOTION For Permission to File Motion for Reconsideration, Nunc Pro Tunc filed by Yale University. (Freiman, Jonathan) (Entered: 09/22/2022) |
| 09/23/2022 | 57 | REPLY to Response to 46 Emergency MOTION For Permission to File Motion for Reconsideration, Nunc Pro Tunc filed by Bandy Lee. (Steigman, Todd) (Entered: 09/23/2022) |
| 10/06/2022 | 58 | ORDER denying 46 Emergency Motion for Permission to File Motion for Reconsideration. On August 30, 2022, the Court issued a Ruling granting defendant's Motion to Dismiss, and closed this case. See Doc. # 42 . On September 19, 2022, plaintiff, through new counsel, filed a motion seeking "permission to file a motion for reconsideration, nunc pro tunc, with respect to the Court's Ruling granting Defendant's motion to dismiss." Doc. # 46 at 1. Local Rule 7(c) provides that any motion for reconsideration "shall be filed and served within seven (7) days of the filing of the decision or order from which relief is sought[.]" D. Conn. L. Civ. R. 7(c)(1). The instant motion was filed twenty days after the Court's Ruling. The Court has evaluated the arguments plaintiff asserts she would make if permitted to file an untimely motion to reconsider, and finds that any such motion would be futile.<br><br>"Motions for reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions. Such motions will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c)(1). A motion to reconsider may not be used "solely to relitigate an issue already decided." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citation and quotation marks omitted).<br><br>Plaintiff chose to retain new counsel after the Court issued its ruling. See Docs. # 44 , # 45 . The fact that plaintiff's new counsel might have made different arguments about the sufficiency of the claims in the Amended Complaint does not warrant reconsideration. Courts have consistently held that the "mere appearance of [new] counsel does not" provide grounds for reconsideration. J.P. Morgan Chase Bank, N.A. v. Caires, No. 3:17CV01298(JCH), 2017 WL 4071137, at *1 n.1 (D. Conn. Sept. 14, 2017); see also Lopes v. First Unum Ins. Co., No. 09CV02642(RRM), 2011 WL 13298876, at *2 (E.D.N.Y. Dec. 27, 2011) ("Reconsideration is not the proper remedy, where... plaintiff has submitted no new facts or law but merely questions the effectiveness of her attorney's tactical decisions[.]").<br><br>Plaintiff's new counsel "may be dissatisfied with its predecessor's arguments to the Court, but on a reconsideration motion, [plaintiff's] new counsel is bound by those arguments." Pierre v. Planet Auto., Inc., No. 13CV00675(MKB), 2016 WL 6459617, at *4 (E.D.N.Y. Oct. 31, 2016). Plaintiff simply "seeks a fresh attempt with new counsel to |

persuade the Court on the merits of its interpretation, which is simply not the appropriate use of a [reconsideration] motion." Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. 19CV06957(AJN), 2022 WL 889209, at *2 (S.D.N.Y. Mar. 25, 2022). Plaintiff's new counsel fails to "point to controlling decisions or data that the court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c).

In fact, the Court did not "overlook" any of the matters raised in plaintiff's proposed motion. See Doc. # 46 . When considering a motion to dismiss, the Court's task is to determine whether the complaint, apart from any of its conclusory allegations, alleges "enough facts to state a claim [for] relief that is plausible on its face[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The substance of plaintiff's proposed, untimely motion would not alter the Court's conclusion that the Amended Complaint, on its face, failed to state a cognizable claim. "Some of these arguments were previously asserted before the Court, whereas some are new or repackaged[.]... Not one of these arguments, however, provides a basis for reconsideration." Hertz Glob. Holdings Inc., 2022 WL 889209, at *2. Plaintiff merely seeks to "tak[e] a second bite at the apple." Analytical Surveys, Inc., 684 F.3d at 52. That is not the purpose of a motion for reconsideration. Therefore, plaintiff's motion for permission to file an untimely motion for reconsideration is **DENIED**.

It is so ordered. Signed by Judge Sarah A. L. Merriam on 10/06/2022. (Powers, L.) (Entered: 10/06/2022)

| | | |
|---|---|---|
| 10/06/2022 | 59 | NOTICE OF APPEAL re: 42 Ruling, 43 Judgment, 58 Order by Bandy Lee. Filing fee $ 505, receipt number ACTDC-7093467. (Steigman, Todd) Modified on 10/7/2022 TO LINK TO DOC #42, #43 and #58 (Oliver, T.). (Entered: 10/06/2022) |
| 10/06/2022 | 60 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 59 Notice of Appeal. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as noted below. Dinah Milton Kinney, Clerk. Documents manually filed not included in this transmission: none (Oliver, T.) (Entered: 10/07/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/19/2022 15:27:37 | | |
| **PACER Login:** | Tsteigman | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:21-cv-00389-SALM |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
BANDY LEE                     :      Civ. No. 3:21CV00389(SALM)
                              :
v.                            :
                              :
YALE UNIVERSITY               :      August 30, 2022
                              :
------------------------------x
```

## RULING ON MOTION TO DISMISS [Doc. #32]

Defendant Yale University ("Yale" or "defendant") has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. #32]. Plaintiff Bandy Lee ("plaintiff") has filed a memorandum in opposition to the Motion to Dismiss [Doc. #35], to which Yale has filed a reply. [Doc. #38]. For the reasons stated herein, the Motion to Dismiss [**Doc. #32**] is **GRANTED**.[1]

## I.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted); accord Kaplan v. Lebanese Canadian Bank, SAL, 999 F.3d 842, 854

---

[1] The Court finds that it has subject matter jurisdiction over this action under 28 U.S.C. §1332(a) because plaintiff alleges both that "the amount in controversy is in excess of $75,000[,]" Doc. #27 at 2, and that the parties are citizens of different states. See id.

(2d Cir. 2021). In reviewing such a motion, the Court "must accept as true all nonconclusory factual allegations in the complaint and draw all reasonable inferences in the Plaintiffs' favor." Kaplan, 999 F.3d at 854 (citations omitted). In short, the Court's "role in reviewing a motion to dismiss under Rule 12(b)(6) is to determine if the complaint -- apart from any of its conclusory allegations -- alleges enough facts to state a plausible claim for relief." Taylor Theunissen, M.D., LLC v. United HealthCare Grp., Inc., 365 F. Supp. 3d 242, 246 (D. Conn. 2019).

"[W]hile this plausibility pleading standard is forgiving, it is not toothless. It does not require [the Court] to credit legal conclusions couched as factual allegations or naked assertions devoid of further factual enhancement." Mandala v. NTT Data, Inc., 975 F.3d 202, 207 (2d Cir. 2020) (citation and quotation marks omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (citations and quotation marks omitted).

Typically, a court's review of a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482

F.3d 184, 191 (2d Cir. 2007). However, the Court may also

consider "documents either in plaintiffs' possession or of which

plaintiffs had knowledge and relied on in bringing suit." Brass

v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

In evaluating whether to consider a document at the

12(b)(6) stage,

> finding that plaintiff has had notice of documents used
> by defendant in a 12(b)(6) motion is significant since
> ... the problem that arises when a court reviews
> statements extraneous to a complaint generally is the
> lack of notice to the plaintiff that they may be so
> considered; it is for that reason -- requiring notice so
> that the party against whom the motion to dismiss is
> made may respond -- that Rule 12(b)(6) motions are
> ordinarily converted into summary judgment motions.
> Where plaintiff has actual notice of all the information
> in the movant's papers and has relied upon these
> documents in framing the complaint the necessity of
> translating a Rule 12(b)(6) motion into one under Rule
> 56 is largely dissipated.

Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d

Cir. 1991).

Defendant has attached the following eight exhibits to its

Motion to Dismiss: (a) a January 13, 2020, e-mail from the Chair

of the Psychiatry Department at Yale, Dr. John Krystal, to

plaintiff expressing concerns with plaintiff's public

statements, see Doc. #32-2; (b) a September 4, 2020, letter from

Dr. Krystal to plaintiff explaining the basis for Yale's

decision not to reappoint plaintiff, see Doc. #32-3; (c) a May

17, 2020, letter from Dr. Krystal to plaintiff indicating that

her "faculty appointment in our Department and School of
Medicine will end as of June 30, 2020[,]" Doc. #32-4 at 2; (d) a
September 2020 e-mail chain between plaintiff and Yale's
President, Peter Salovey, regarding Yale's reappointment
decision, see Doc. #32-5; (e) the 2019 Faculty Handbook, see
Doc. #32-6; (f) an August 21, 2020, letter from the Dean of the
Yale School of Medicine, Dr. Nancy J. Brown, dismissing
plaintiff's appeal of defendant's reappointment decision, see
Doc. #32-7; (g) a September 8, 2020, letter from Yale Provost
Scott Strobel, denying plaintiff's appeal of defendant's
reappointment decision, see Doc. #32-8; and (h) a July 28, 2017,
e-mail from Yale's Faculty Affairs Coordinator, David Freedman,
confirming plaintiff's "reappointment as Assistant Clinical
Professor for the term of July 1, 2017-June 30, 2020 in the
Department of Psychiatry at Yale University." Doc. #32-9 at 2.

     Plaintiff -- who relies on many of the documents attached
to defendant's motion to support her opposition -- does not
dispute the authenticity of these documents. See Faulkner v.
Beer, 463 F.3d 130, 134 (2d Cir. 2006) ("[E]ven if a document is
'integral' to the complaint, it must be clear on the record that
no dispute exists regarding the authenticity or accuracy of the
document."). Indeed, she acknowledges that "contractual
relationships between parties may involve numerous pieces of
evidence," but asserts that such evidence "at this stage, [is]

~ 4 ~

not before the court." Doc. #35 at 7.

The Court finds that the documents attached to defendant's
motion fall into three categories: (1) those that are
incorporated by reference in plaintiff's Amended Complaint; (2)
those that are integral to plaintiff's Amended Complaint; and
(3) those that are not properly before the Court at the 12(b)(6)
stage.

"[C]ourts must consider ... documents incorporated into the
complaint by reference" at the 12(b)(6) stage. Tellabs, Inc. v.
Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007). The Amended
Complaint expressly discusses, and incorporates by reference,
the following five documents: the January 13, 2020, e-mail from
Dr. Krystal to plaintiff expressing concerns with plaintiff's
public statements (Doc. #32-2), see Doc. #27 at 10-11; a
September 4, 2020, letter from Dr. Krystal to plaintiff
explaining the basis for Yale's decision not to reappoint
plaintiff (Doc. #32-3), see Doc. #27 at 16-17; a May 17, 2020,
letter from Dr. Krystal to plaintiff indicating that her
"faculty appointment in our Department and School of Medicine
will end as of June 30, 2020[,]" Doc. #32-4 at 1, see Doc. #27
at 11, 17; the 2019 Faculty Handbook (Doc. #32-6), see Doc. #27
at 13, 15, 19; and an August 21, 2020, letter from Dr. Brown
dismissing plaintiff's appeal of defendant's reappointment
decision (Doc. #32-7), see Doc. #27 at 15. Accordingly, the

Court finds that consideration of these five documents is proper
at the 12(b)(6) stage. See Kleinman v. Elan Corp., plc, 706 F.3d
145, 152 (2d Cir. 2013) (The Court may "consider any ...
documents incorporated into the complaint by reference[.]"
(citation and quotation marks omitted)).

The Court will also consider the July 28, 2017, e-mail from
David Freedman confirming plaintiff's "reappointment as
Assistant Clinical Professor for the term of July 1, 2017-June
30, 2020 in the Department of Psychiatry at Yale University[]"
because that e-mail is integral to the Amended Complaint. Doc.
#32-9 at 2. Plaintiff does not expressly reference this e-mail
in her Amended Complaint. The Second Circuit has "recognized,
however, that in some cases, a document not expressly
incorporated by reference in the complaint is nevertheless
integral to the complaint and, accordingly, a fair object of
consideration on a motion to dismiss. A document is integral to
the complaint where the complaint relies heavily upon its terms
and effect." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir.
2016) (citation and quotation marks omitted). This e-mail
"specifies the scope" of one significant aspect of the agreement
that is at issue in this litigation, specifically, the term of
plaintiff's appointment. Sklair v. Mike Bloomberg 2020, Inc.,
No. 1:20CV02495(LTS), 2022 WL 889849, at *3 (S.D.N.Y. Mar. 25,
2022). As a result, the Court finds it proper to consider the e-

mail "as integral to[]" the Amended Complaint. Id.; see also
DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)
("Where a document is not incorporated by reference, the court
may [nevertheless] consider it where the complaint relies
heavily upon its terms and effect, thereby rendering the
document integral to the complaint." (citations and quotation
marks omitted)).[2]

    The Court finds that consideration of the two remaining
documents attached to defendant's motion is improper at the
12(b)(6) stage. Defendant attaches correspondence from President
Salovey and Dr. Strobel regarding Yale's denial of plaintiff's
attempts to appeal Yale's reappointment decision. See Doc. #32-5
(President Salovey's September 25, 2020, e-mail); Doc. #32-8
(Dr. Strobel's September 8, 2020, letter). These documents are
not "critically related to Plaintiffs' factual allegations and
underlying legal theory[.]" McNeil v. Yale Univ., 436 F. Supp.
3d 489, 515 (D. Conn. 2020), aff'd in part, vacated in part sub
nom. McNeil v. Yale Chapter of Alpha Delta Phi Int'l, Inc., No.
21-639-cv, 2021 WL 5286647 (2d Cir. Nov. 15, 2021). Nor have
they been incorporated by reference into the Amended Complaint.
Plaintiff briefly notes that her "appeals and subsequent
requests for review were summarily denied[,]" see Doc. #27 at

---

[2] The Court notes that its decision would not be altered if it
did not consider this document.

16, but she does not specifically cite or reference either

President Salovey's September 25, 2020, e-mail (Doc. #32-5) or

Dr. Strobel's September 8, 2020, letter (Doc. #32-8).

Consideration of these documents is not proper (or necessary) at

the 12(b)(6) stage.

In sum, the Court will consider the following exhibits when

resolving this motion: Doc. #32-2, Doc. #32-3, Doc. #32-4, Doc.

#32-6, Doc. #32-7, and Doc. #32-9. However, the Court will not

consider Doc. #32-5 or Doc. #32-8.

## II.   **Background**

The Court accepts the following allegations as true, solely

for purposes of this Motion to Dismiss.

Plaintiff is a resident of the state of New York, and a

graduate of Yale School of Medicine. See Doc. #27 at 2. In 2003,

Yale appointed plaintiff "as Assistant Clinical Professor, Law

and Psychiatry Division, Yale School of Medicine." Id. Dr. Lee

continued in that role for seventeen years, with her most recent

term spanning from "July 1, 2017-June 30, 2020[.]" Doc. #32-9 at

2.

Pursuant to the Yale Faculty Handbook, plaintiff's

"appointment as Assistant Clinical Professor is listed under the

'Voluntary Ranks[.]'" Doc. #27 at 13. Voluntary faculty members

"typically do not receive compensation or benefits from the

School[,]" id. (citation and quotation marks omitted), and

~ 8 ~

plaintiff does not allege that Yale paid her for her services as an Assistant Clinical Professor.

Despite her classification as a volunteer, however, plaintiff alleges that she was required to "participate in four hours of student-related, teaching, or supervisory activities per week. These activities could be satisfied through teaching a course, lectures, through advising students in connection with their thesis preparation, supervising residents, participating in seminars and grand rounds, engaging in scholarly activity, participating in department administration, and other activities." Id. at 3-4.

"In exchange for her student-related and teaching activities, Dr. Lee received benefits, privileges, and opportunities, as well as related compensation and other indirect but significant remuneration, that she would not have otherwise received but for her academic affiliation with Yale." Id. at 4. Specifically,

> Dr. Lee was entitled to receive and did receive ... : office space, facilities, libraries, subscription-based access to research databases and journal articles, statisticians, laboratories, statistical programs and software, IT and technology services, computer programs and software, media studios (radio and television), and campus transportation, all of which she used for her research, writing, to assist with her speaking engagements, advocacy and other professional obligations. Notably, Dr. Lee was informed Division Head Dr. Howard Zonana, that in connection with her faculty appointment, she was covered by Yale's professional malpractice insurance policy for her forensic

consultations.

Id. (sic).

Plaintiff's allegations regarding the conflict underlying

this action largely begin with events occurring in January 2020.

See id. at 9.[3]

> [O]n January 2, 2020, University of Minnesota Law
> Professor and Yale Law School alumnus Richard Painter
> tweeted and tagged Dr. Lee to Mr. Dershowitz's
> characterization of his "perfect sex life," stating that
> Dershowitz's phrasing was similar to Trump's recount of
> the "perfect" call. Dr. Lee responded, "Alan
> Dershowitz's employing the odd use of 'perfect' ...
> might be dismissed as ordinary influence in most
> contexts." She added that "given the severity and spread
> of 'shared psychosis' among just about all of Trump's
> followers, a different scenario is more likely," and
> that scenario was "that he has wholly taken on Trump's
> symptoms by contagion."

Id.[4]

"[O]n January 11, 2020, Mr. Dershowitz sent an email to,

inter alia, Yale spokesperson Karen Peart, University President

Peter Salovey's Chief of Staff Joy McGrath, and Yale Law School

Dean Heather Gerken[.]" Id. at 10. Mr. Dershowitz's e-mail

stated:

---

[3] It appears from certain documents incorporated into the Amended
Complaint that, from Yale's perspective, the conduct eventually
giving rise to the non-renewal of plaintiff's appointment began
as early as 2017. See, e.g., Doc. #27 at 16 (quoting letter form
Dr. Krystal to Dr. Lee discussing concerns relating to
plaintiff's conduct "[s]ince 2017[]").

[4] The Court presumes familiarity with the meaning of the terms
"tweet" and "tagged" as those terms are used in the Amended
Complaint.

> Dr. Bandy Lee of the Yale Medical School has publicly
> 'diagnosed' me as 'psychotic,' based on my legal and
> political views, and without ever examining or even
> meeting me. ... This constitutes a serious violation of
> the ethics rules of the American Psychiatric
> Association. I am formally asking that association to
> discipline Dr. Lee. By this email, I also formally ask
> Yale University, Yale Law School and its medical school
> to determine whether Dr. Lee broke any of its rules.

Id. (citation and quotation marks omitted).

On January 13, 2020, Dr. Krystal sent plaintiff an e-mail

that stated, in part:

> It seems to me, and my impression is supported by my
> discussion with Howard, that the published quotes
> suggest that you are not making cautious, reasoned,
> statements qualified by the limitations of the
> information that you have or considering alternatives to
> the conclusions that you present. Worse, the
> recklessness of your comments creates the appearance
> that they are self-serving in relation to your personal
> political beliefs and other possible personal
> aspirations.
>
> Here is the problem for me. It seems to me that you have
> been increasingly reckless and irresponsible in your
> public statements. I have tried very hard to find a path
> that would enable you to continue your teaching role.
> However, you are putting me in a position where I have
> to ask, "Is this the sort of person that I can trust to
> teach medical students, residents, and forensic
> psychiatry fellows?" I have consulted Howard Zonana on
> this question and he is equally concerned that you are
> not showing good medical judgement in your public
> statements. It is our shared opinion that if your
> behavior does not change, we will have no alternative
> but to terminate your teaching role at Yale University.
> As you have no other duties at Yale, termination of your
> teaching role would also terminate your faculty
> appointment.
>
> I think that the three of us should meet to review your
> recent comments and your plans for future comments.
> Perhaps we can find a path forward. I will ask Halppen

Donoghoe to set up this meeting.

Doc. #32-2 at 2.

On January 17, 2020, "Dr. Krystal called Dr. Lee to a meeting that included three additional faculty members." Doc. #27 at 11. There, "Dr. Lee was told that she had breached psychiatric ethics by 'diagnosing' Mr. Dershowitz, a conclusion with which Dr. Lee strongly disagreed." Id. During the meeting, "Dr. Lee expressed her desire for a discussion and asked for an investigation, as she felt that what constitutes psychiatric ethics had been distorted under the Trump presidency. Yale refused to have further discussions with Dr. Lee and refused to investigate the matter." Id.

On May 17, 2020, Dr. Lee received what she describes as a "termination letter" from Dr. Krystal. Id. That letter stated that in reviewing Dr. Lee's "candidacy for reappointment to the voluntary faculty of the Yale Department of Psychiatry, we became aware that you no longer have a formal teaching role in the Division of Law and Psychiatry. As a result, your faculty appointment in our Department and School of Medicine will end as of June 30, 2020." Doc. #32-4 at 2.

> After multiple informal attempts to elicit an opportunity to be heard from her department failed, Dr. Lee filed an appeal related to her termination on or about August 14, 2020 with Dr. Nancy J. Brown, Dean of the School of Medicine. Her appeal was not considered. Rather, on or about August 21, 2020, her appeal was dismissed by Dr. Brown, for procedural reasons. On or

about August 25, 2020, Dr. Lee filed a letter of appeal
with Dr. Scott A. Strobel, Yale's Provost, and then to
President Salovey, Yale's President, on or about
September 24, 2020. These appeals and subsequent
requests for review were summarily denied.

Doc. #27 at 15-16.

Dr. Krystal sent plaintiff a letter on September 4, 2020.

See id. at 16. The letter "explain[ed] the basis of the decision

to terminate her faculty appointment." Id. The letter stated, in

full:

Dear Dr. Lee:

Provost Strobel has shared with me your belief that you
did not have an adequate opportunity to understand and
respond to the concerns that caused the Department of
Psychiatry to deny your request for reappointment.
Provost Strobel has asked me to explain to you the basis
of the Department's decision, and I am happy to do so.

As you know, on January 17, 2020, a review committee,
composed of Dr. Kapoor, Dr. Rohrbaugh, Dr. Zonana and
me, met with you for an hour-long discussion of your
role in the Department, which consisted of teaching and
mentorship in the Division of Law and Psychiatry.
Although, at one time, you supervised forensic
psychiatry fellows working with the Yale Law School
clinics, you ceased doing so a few years ago. In recent
years, you mainly provided case evaluations and acted as
a consultant to law students in the clinical program. At
the beginning of this year, that role came to an end,
partly due to a concern that your psychiatric opinions
were open to challenge in court. In addition, your
attendance at key didactic seminars within the
Department, such as Friday case conferences, dwindled in
2019. By the beginning of this year, you had no formal
Departmentally-sanctioned teaching activities. Your
only teaching role was outside the Department, as
supervisor to two undergraduates and a medical student
doing projects on prison violence

Given these circumstances, the review committee needed

to consider whether the Department could offer you a continuing teaching role, and we met with you to help us make that decision. The key question in our minds was whether you had the clinical judgment and professionalism to teach trainees key aspects of their profession. Your diagnostic impressions of President Trump and several other public figures and your recommendations for treating President Trump played a role in our discussion. This was not because of the political content of your speech. As you know, the Department and the University publicly defended your academic freedom and your right to express your opinions as a citizen. As detailed below, the Committee's concern was what your diagnoses and treatment recommendations said about your clinical abilities and professionalism.

Since 2017, you have taken the position that you have a "duty to warn" the public that President Trump presents a threat to public safety. The duty to warn derives from the Tarasoff decision and subsequent legal developments, and it applies to clinicians in a treatment relationship with a potentially dangerous person. It has never been applied outside that context. In public comments, you said that President Trump was incapacitated by a psychiatric disorder, and you identified symptoms such as aggressive speech, sexual misconduct, incitement to violence, belief in conspiracies, declining cognitive functioning, and neurological deficits. Initially, you did not identify the disorder causing these supposed symptoms. In December 2019, you said publicly that President Trump exhibited a "pattern of delusions," was "lacking rational decisionmaking capacity," and had "definitive signs of severe pathology" that required "an advanced level of care." In January 2020, you called for "an involuntary evaluation" of President Trump, and you said, "I am beginning to believe a mental health hold ... will become inevitable." That same month, you publicly suggested that President Trump, Rudolph Giuliani and Alan Dershowitz had a "shared psychosis."

I want to emphasize that you did not make these statements as a layperson offering a political judgment; you made them explicitly in your professional capacity as a psychiatrist and on the basis of your psychiatric knowledge and judgment. For that reason, the committee decided it was appropriate to consider how these statements reflected your ability to teach trainees.

We began our discussion by asking you to address whether
your diagnosis of President Trump and your treatment
recommendations should have included a disclaimer
regarding limited evidence, whether they adequately
reflected the process of differential diagnosis, and
whether you applied any recognized standards when you
determined on the basis of his public statements that
President Trump presented a danger to the public health.
Your responses failed to address any of these points.

Our discussion then turned to your statement that
President Trump and Mr. Dershowitz had a shared
psychosis. You told us that "someone doesn't have to be
psychotic in order to have a psychosis;" that your
observations had convinced you that the strong emotional
bond between President Trump and his followers "is a
group phenomenon of shared psychosis;" and that, in the
presence of this bond, "the default is that you would
expect a shared psychosis." You further claimed that you
were misquoted; that, in fact, you had said President
Trump and Mr. Dershowitz "may" have a shared psychosis;
and that you meant to say that they have a shared
delusional disorder. We asked you to explain in detail
the basis for this diagnosis, and none of the evidence
you offered met the DSM-5 criteria for shared delusional
disorder. The committee also noted that you explored no
other explanations that might have accounted for the
data that led you to your diagnosis.

Following our discussion with you, the committee
considered whether the information that you shared with
us was relevant to your capacity to teach trainees the
core competencies required by the ACGME. We decided that
our discussion with you implicated three of the six
competencies: medical knowledge, interpersonal and
communication skills, and professionalism.

In regard to medical knowledge, the ACGME requires
trainees "to demonstrate knowledge about established and
evolving biomedical, clinical, and cognate sciences and
the application of this knowledge to patient care." Our
discussion of your diagnosis of shared psychosis or, as
you preferred, shared delusional disorder convinced the
committee that you do not adequately understand or
choose not to follow current methods for diagnosing
psychotic disorders, which are common in the psychiatric

practice that our trainees will enter.

In regard to interpersonal communication skills, the ACGME requires trainees "to demonstrate interpersonal and communication skills that result in effective information exchange and teaming with patients, patients' families, and professional associates." In our lengthy discussion with you, you were unable to explain to four trained colleagues the basis of a very serious diagnosis. In addition, you have made many conflicting, confusing, and sometimes inaccurate public statements about psychiatric diagnosis and the profession's duty to warn.

Finally, the ACGME requires trainees "to demonstrate a commitment to carrying out professional responsibilities, adherence to ethical principles, and sensitivity to a diverse patient population." Although the committee does not doubt that you are acting on the basis of your personal moral code, your repeated violations of the APA's Goldwater Rule and your inappropriate transfer of the duty to warn from the treatment setting to national politics raised significant doubts about your understanding of crucial ethical and legal principles in psychiatry.

In light of the above concerns, the Committee concluded that the Department should not seek a new teaching role for you. The Committee report was shared with the Executive Committee of the Department of Psychiatry and discussed at length. Its recommendation, that your teaching duties not be reinstated, was endorsed unanimously by the Executive Committee. In the absence of a formal teaching role, your voluntary appointment lapsed.

I hope that this letter clarifies the process leading to the Department decision to not reinstate your teaching responsibilities. We recognize that without formal teaching responsibilities your appointment could not be reinstated.

Doc. #32-3 at 2-4.

Plaintiff asserts that her "faculty appointment was

governed by a Faculty Handbook, policy statements," Doc. #27 at

19, the parties' course of conduct, see id. at 3, and statements

made by Yale administrators, see id. at 12.

Plaintiff describes the parties' course of conduct as

follows:

> Dr. Lee served as a faculty member of the Law and
> Psychiatry Division at Yale School of Medicine for 17
> years. ... Dr. Lee was not required to apply for any
> "renewal" of her reappointment; it appeared to be
> automatic. Oftentimes, Dr. Lee would not receive any
> written notification about any purported "renewal" of
> her appointment; it was understood by both the Plaintiff
> and Defendant that her appointment was ongoing, and she
> would continue in her role without any specific end date.
> She served on Yale's faculty and Yale accepted her
> services through a continuing course of dealing.

Id. at 3.

Plaintiff further describes certain conversations she had

with Yale administrators. Specifically, plaintiff alleges: (a)

"Dr. Lee discussed with Division Head Dr. Zonana the curriculum

and timetable for the course [she intended to teach] to

commence, and he indicated approval and appreciation for her

efforts[,]" id. at 12; (b) "Prior to Mr. Dershowitz's

communication to Yale, Division Head Dr. Zonana complimented her

on how she was handling her public statements[,]" id.; and (c)

"Prior to Mr. Dershowitz's communication to Yale, Dr. Krystal

also commended Dr. Lee's work." Id.

The Amended Complaint also asserts that "[r]ights of

academic freedom and freedom of expression are expressly

preserved in the Faculty Handbook[.]" Id. at 13. However, the

lone provisions of the Faculty Handbook quoted by plaintiff

pertain to compensation for voluntary faculty members and

procedures that certain faculty members are entitled to when a

decision not to reappoint those faculty members is made. See id.

at 13-14.

Finally, the Amended Complaint relies on a variety of Yale

policies that are not alleged to be found in the Faculty

Handbook. Specifically, plaintiff alleges that Yale maintains

the following policy:

> Yale University is committed to the free expression of
> ideas by members of the University community, including
> expression of political views; and to the freedom of
> students and faculty to engage in scholarship related to
> political life and discourse. The Woodward Report ...
> reinforces these commitments, and reminds us that within
> the diversity of the Yale community there coexist many
> points of view.

Id. at 14-15 (quotation marks omitted).

Plaintiff quotes the "Woodward Report" as stating:

> We value freedom of expression precisely because it
> provides a forum for the new, the provocative, the
> disturbing, and the unorthodox. Free speech is a barrier
> to the tyranny of authoritarian or even majority opinion
> as to the rightness or wrongness of particular doctrines
> or thoughts.
>
> If the priority assigned to free expression by the nature
> of a university is to be maintained in practice, clearly
> the responsibility for maintaining that priority rests
> with its members. By voluntarily taking up membership in
> a university and thereby asserting a claim to its rights
> and privileges, members also acknowledge the existence
> of   certain   obligations   upon   themselves   and   their
> fellows. Above all, every member of the university has
> an   obligation   to   permit   free   expression   in   the

university. No member has a right to prevent such
expression. Every official of the university, moreover,
has a special obligation to foster free expression and
to ensure that it is not obstructed.

The policy of academic freedom is incorporated in the
Faculty Handbook, and other policy statements, rules,
guidelines and regulations of the University, and
constitutes an essential restraint against interference
by the administration and university of its exercise by
the faculty.

Id. at 15.

Plaintiff asserts that "Yale terminated Dr. Lee's faculty

appointment in violation of her right to academic freedom and

other rights contained within Yale's Faculty Handbook, policy

statements, guidance, regulations, and rules applicable to her

faculty appointment." Id. at 19.

III. **Discussion**

Plaintiff brings four claims against Yale. Count One

asserts a claim for breach of contract, alleging that "Yale

terminated Dr. Lee's faculty appointment in violation of her

right to academic freedom, and other rights contained with

Yale's Faculty Handbook, policy statements, guidance,

regulations, and rules applicable to her faculty appointment."

Id. Count Two asserts that Yale breached the implied covenant of

good faith and fair dealing "when it deprived Dr. Lee of her

right to academic freedom and/or the rights and guarantees

provided by the Faculty Handbook, policy statements, guidance,

regulations and rules applicable to her faculty appointment,

thereby depriving Dr. Lee of the benefit of the contract." Id.
Count Three asserts that Yale wrongfully terminated Dr. Lee for
"her exercise of her protected speech rights[]" in violation of
Connecticut General Statutes §31-51q. Id. at 20. Count Four
asserts a claim for negligent misrepresentation on the grounds
that "the representations made in the Handbook, as well as its
policy statements, guidance, regulations, and rules, were false,
and they were known or should have been known to be false by
Yale." Id. at 21.

**A.    Breach of Contract**

Yale moves to dismiss plaintiff's claim for breach of
contract. Plaintiff contends that "Yale terminated Dr. Lee's
faculty appointment in violation of her right to academic
freedom and other rights contained within Yale's Faculty
Handbook, policy statements, guidance, regulations, and rules
applicable to her faculty appointment." Id. at 19.

Plaintiff explains that her breach of contract claim is not
"based on any singular document." Doc. #35 at 12. The Court
therefore construes the Amended Complaint to assert that the
parties formed an implied contract that Yale would not decline
to reappoint plaintiff, regardless of whether it found that
plaintiff was no longer qualified for the position, based at
least in part on her public statements. See Doc. #27 at 19.
Reading the Amended Complaint generously, plaintiff appears to

base her claim that such an implied contract existed on the parties' course of conduct, the statements made by Yale administrators, the Faculty Handbook, and Yale's policy statements.

"An implied in fact contract is the same as an express contract, except that assent is not expressed in words, but is implied from the conduct of the parties." Vertex v. City of Waterbury, 898 A.2d 178, 190 (Conn. 2006). Under Connecticut law, "[t]he elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." Meyers v. Livingston, Adler, Pulda, Meiklejohn and Kelly, P.C., 87 A.3d 534, 540 (Conn. 2014). The Court finds that plaintiff has failed to adequately allege that she had an implied contract with Yale that Yale would not decline to reappoint plaintiff regardless of whether it found that she was no longer qualified for the position, based at least in part on her public statements.

"A contract implied in fact, like an express contract, depends on actual agreement." Coelho v. Posi-Seal Int'l, Inc., 544 A.2d 170, 173 (Conn. 1988); see also Ezold v. Wellpoint, Inc., No. 3:06CV00381(AWT), 2007 WL 1238725, at *2 (D. Conn. Apr. 28, 2007). "[T]he party charged must have agreed, either by words or action or conduct, to undertake a contractual commitment to the party seeking to enforce such a commitment."

Peralta v. Cendant Corp., 123 F. Supp. 2d 65, 83 (D. Conn. 2000).

A contractual commitment "cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties." Christensen v. Bic Corp., 558 A.2d 273, 277 (Conn. App. 1989). "In order to support contract liability, the defendants' representations must be sufficiently definite to manifest a present intention on the part of the defendants to undertake immediate contractual obligations to the plaintiff." Burnham v. Gelb, 717 A.2d 811, 813 (Conn. App. 1998) (citation and quotation marks omitted). In the employment context, "[s]uch an agreement may be based on an employer's representations to the effect that the employee will not be terminated under certain circumstances or except for good cause or that employment will continue as long as certain conditions are met." Jarnutowski v. Pratt & Whitney, 103 F. Supp. 3d 225, 240 (D. Conn. 2015) (citation and quotation marks omitted).

Plaintiff asserts that the parties' course of conduct, statements made by Yale administrators, provisions of the Faculty Handbook, and Yale policy statements, gave rise to an implied contract. Each basis on which plaintiff contends a contract was formed is flawed. Together, they do not support a finding that Yale intended to enter into an implied contract with the terms alleged by plaintiff.

First, plaintiff relies on the parties' course of conduct.
Specifically, plaintiff asserts: "Oftentimes, Dr. Lee would not
receive any written notification about any purported 'renewal'
of her appointment; it was understood by both the Plaintiff and
Defendant that her appointment was ongoing, and she would
continue in her role without any specific end date." Doc. #27 at
3.

Plaintiff fails to acknowledge, in arguing that she
expected her appointment to be effectively automatically
renewed, that the Faculty Handbook expressly provides: "The
reappointment of persons holding term appointments is not
automatic at Yale." Doc. #32-6 at 23. As noted elsewhere,
plaintiff expressly relies on the Faculty Handbook where she
believes it supports her claims, but disregards this express
statement of the Faculty Handbook that undermines her claims.

Second, plaintiff points to specific, isolated statements
made by Yale administrators. Specifically, plaintiff asserts:
(a) "Dr. Lee discussed with Division Head Dr. Zonana the
curriculum and timetable for the course [she intended to teach]
to commence, and he indicated approval and appreciation for her
efforts[,]" id. at 12; (b) "Prior to Mr. Dershowitz's
communication to Yale, Division Head Dr. Zonana complimented her
on how she was handling her public statements[,]" id.; and (c)
"Prior to Mr. Dershowitz's communication to Yale, Dr. Krystal

also commended Dr. Lee's work." Id.

These three alleged generic expressions of "approval and appreciation" or commendation are insufficient to even suggest a promise of continued appointment, much less support a contractual commitment. Even if the Court were to treat these statements as "favorable performance evaluations" of plaintiff, such "isolated positive feedback" does not support a finding that Yale intended to guarantee plaintiff continued appointment. Rubinow v. Boehringer Ingelheim Pharms., Inc., 496 F. App'x 117, 119 (2d Cir. 2012) (affirming grant of summary judgment for defendant on employment discrimination claim); see also Emanuel v. Oliver, Wyman & Co., LLC, 85 F. Supp. 2d 321, 332 (S.D.N.Y. 2000) (observing that favorable letter of reference emphasizing plaintiff's positive traits did not undermine basis for plaintiff's termination).

Third, the Amended Complaint asserts that "[r]ights of academic freedom and freedom of expression are expressly preserved in the Faculty Handbook[.]" Doc. #27 at 13. However, the lone provisions of the Faculty Handbook quoted by plaintiff pertain to compensation for voluntary faculty members and procedures that certain faculty members are entitled to when a decision not to reappoint those faculty members is made.[5] See id.

---

[5] Specifically, the Amended Complaint asserts that Yale did not follow certain notice procedures described in the handbook when

at 13-14. Plaintiff's vague assertion that some unspecified

provision in the Faculty Handbook creates a right to "academic

freedom" is plainly insufficient to show that defendant

undertook a contractual commitment to guarantee plaintiff

continued reappointment. See Brescia v. Leff, No.

3:04CV01680(PCD), 2005 WL 8167031, at *4 (D. Conn. Sept. 30,

2005) ("Although Plaintiff asserts the existence of an implied

contract, she has not set forth any allegations, which if taken

as true, would demonstrate Defendants' intention to be

contractually liable to Plaintiff.").

Fourth, plaintiff relies on Yale's "formal policy and

practice of providing for academic freedom for all its faculty,

whether tenured or not." Id. at 14. Specifically, plaintiff

first points to an alleged policy statement, from an unspecified

source, which states:

> Yale University is committed to the free expression of
> ideas by members of the University community, including
> expression of political views; and to the freedom of
> students and faculty to engage in scholarship related to
> political life and discourse. The Woodward Report ...

declining to renew plaintiff's appointment. See Doc. #27 at 14.
Yale has moved to dismiss plaintiff's claims under this theory,
asserting that the notice provisions relied upon by plaintiff
expressly do not apply to voluntary faculty. See Doc. #32-1 at
18, 20. Plaintiff's memorandum in opposition does not respond to
this aspect of the motion to dismiss. The Court therefore finds
this claim has been abandoned by plaintiff. See Malik v. City of
N.Y., 841 F. App'x 281, 284 (2d Cir. 2021) ("[A] court may infer
from a party's partial opposition that relevant claims or
defenses that are not defended have been abandoned[.]" (citation
and quotation marks omitted)).

reinforces these commitments, and reminds us that within
the diversity of the Yale community there exists many
points of view.

Id. at 14-15 (quotation marks omitted).

Plaintiff then quotes the following excerpt of the Woodward

Report:

> We value freedom of expression precisely because it
> provides a forum for the new, the provocative, the
> disturbing, and the unorthodox. Free speech is a barrier
> to the tyranny of authoritarian or even majority opinion
> as to the rightness or wrongness of particular doctrines
> or thoughts.
>
> If the priority assigned to free expression by the nature
> of a university is to be maintained in practice, clearly
> the responsibility for maintaining that priority rests
> with its members. By voluntarily taking up membership in
> a university and thereby asserting a claim to its rights
> and privileges, members also acknowledge the existence
> of certain obligations upon themselves and their
> fellows. Above all, every member of the university has
> an obligation to permit free expression in the
> university. No member has a right to prevent such
> expression. Every official of the university, moreover,
> has a special obligation to foster free expression and
> to ensure that it is not obstructed.
>
> The policy of academic freedom is incorporated in the
> Faculty Handbook, and other policy statements, rules,
> guidelines and regulations of the University, and
> constitutes an essential restraint against interference.

Id. at 15.[6]

---

[6] In its Motion to Dismiss, defendant refers to a provision of
the Faculty Handbook stating: "Members of this University have
freely associated themselves with Yale and in doing so have
affirmed their commitment to a philosophy of mutual tolerance
and respect. Physical restriction, coercion, or intimidation of
any member of the community is contrary to the basic principles
of the University." Doc. #32-1 at 28. Plaintiff does not cite

Such generalized statements of principles are not
sufficient to manifest the intent to form a contract for
guaranteed reappointment. See, e.g., Pecoraro v. New Haven Reg.,
344 F. Supp. 2d 840, 844 (D. Conn. 2004) ("[A]ny promises in the
employer's anti-discrimination policy are general statements of
adherence to the anti-discrimination laws, and standing alone
they do not create a separate and independent contractual
obligation." (citation and quotation marks omitted)); Peralta v.
Cendant Corp., 123 F. Supp. 2d 65, 84 (D. Conn. 2000) ("The
language of the anti-harassment policy that plaintiff urges as
the basis of his implied contract claim does not indicate that
defendant is undertaking any contractual obligations towards the
plaintiff[.]").

The parties' course of conduct, the statements made by Yale
administrators, the Faculty Handbook, and Yale's policy
statements -- taken individually or in combination -- are, as a

---

this provision of the Faculty Handbook in her Amended Complaint,
but argues in her opposition memorandum that Yale breached this
provision when it "summarily summoned [plaintiff] to a meeting
with Dr. Krystal by an accusatory email, based upon the demand
of Prof. Dershowitz[.]" Doc. #35 at 8. It is insufficient to
raise a claim in briefing, rather than in the Complaint, but in
any event, the claim lacks merit. Plaintiff's interpretation of
this provision would effectively prohibit supervisors from
requiring faculty members to meet with them regarding
performance issues; such an interpretation would lead to absurd
results. See Doc. #38 at 8; cf. Konover v. Kolawoski, 200 A.3d
1177, 1184 (Conn. App. 2018) (declining to interpret language in
a manner that would lead to absurd results).

matter of law, insufficiently definite to create the contract
that plaintiff seeks to enforce. Plaintiff has "pluck[ed] out of
context" various statements indicating that she was previously
successful in her role, and expressing that Yale values academic
freedom. Gunn v. Penske Auto. Grp., Inc., No. 3:17CV00757(AWT),
2018 WL 7374285, at *5 (D. Conn. Mar. 30, 2018). Plaintiff has
failed, however, to point to any facts, "which if taken as true,
would demonstrate Defendants' intention to be contractually
liable to Plaintiff" for declining to reappoint her regardless
of whether it found that she was no longer qualified for the
position. Brescia, 2005 WL 8167031, at *4.

Absent such facts, Yale's generalized comments regarding
plaintiff's job performance and its stated commitment to
academic freedom are simply too vague to create a contractual
commitment that Yale would not decline to reappoint plaintiff
even when it found that she no longer had "the clinical judgment
and professionalism to teach trainees key aspects of their
profession." Doc. #32-3 at 2; see Anderson v. Post/Newsweek
Stations, No. 2:90CV00583(PCD), 1992 WL 92399, at *3 (D. Conn.
Feb. 3, 1992) ("The 'promise' that plaintiff would receive 'full
support' and the like, from his superiors is simply too vague to
expect that plaintiff would have reasonably relied on it."); cf.
Medina-Corchado v. Univ. of New Haven, No. 3:21CV00132(JAM),
2022 WL 279871, at *5 (D. Conn. Jan. 31, 2022) ("The fact that

~ 28 ~

an educational institution may issue a policy does not tend to suggest that the policy creates a contract for which a student may sue the institution for breach of contract if the institution does not follow its policy.").

This is especially true in light of the express disavowal, in at least two places in the Faculty Handbook, of any guarantee of reappointment. See Doc. #32-6 at 23 ("The reappointment of persons holding term appointments is not automatic at Yale."); id. at 30 ("Faculty members on term appointments do not have a right to reappointment[.]"). It is not reasonable to believe that the other portions of the Faculty Handbook, a few stray supportive remarks, and a history of consistent reappointment somehow negates these express statements of intent by Yale.

Plaintiff effectively asks this Court to hold that a private university, by reappointing a voluntary faculty member on several occasions, being complimentary of her work, and expressing general support for academic freedom, undertakes a contractual commitment to guarantee reappointment to that faculty member, regardless of whether the university finds that the faculty member is no longer qualified for the position. See Doc. #32-3 at 2-4 (Dr. Krystal's letter explaining defendant's conclusion that plaintiff was lacking in three of the six required competencies and that her "clinical abilities and professionalism[]" were insufficient to support reappointment).

That would be an extraordinary and unreasonable result, and the Amended "complaint here falls well short of alleging non-conclusory facts to show that" Yale undertook such a contractual commitment to plaintiff. Medina-Corchado, 2022 WL 279871, at *4.

Plaintiff has thus failed to adequately allege that Yale undertook a contractual commitment to reappoint plaintiff even if it found that she was no longer qualified for the position, based at least in part on public statements she made. Because plaintiff has failed to adequately allege that such a contract was formed, her claim for breach of contract is dismissed.

The Court need not -- and does not -- decide whether Yale's failure to reappoint plaintiff would breach such an agreement, had it existed. The Court notes, however, that a decision not to reappoint a voluntary faculty member is an academic decision that "concerns a requirement representative of an academic relationship ... that is strongly associated with institutions of higher learning, ... and ... has little to do with the normal attributes of an employee relationship." Daley v. Wesleyan Univ., 772 A.2d 725, 736 (Conn. App. 2001) (citation and quotation marks omitted). "Because an academic institution is afforded considerable discretion when, through its employees, it exercises its professional judgment on academic matters, the plaintiff" must allege facts showing that the faculty's decision not to reappoint her "was made arbitrarily, capriciously or in

bad faith[.]" Id. To satisfy this standard, plaintiff would have
to allege facts showing that "the [University's] decision had no
discernible rational basis." Gupta v. New Britain Gen. Hosp.,
687 A.2d 111, 121 (Conn. 1996) (citation and quotation marks
omitted).

The Court does not reach whether Yale's reappointment
decision in this case was an academic decision entitled to
deference, because the Court finds no contract existed. Nor does
it reach whether Yale had a discernible rational basis for its
decision. It is notable, however, that the Amended Complaint
alleges that Yale informed plaintiff that she was not being
reappointed because of "the Committee's concern [regarding] what
[plaintiff's] diagnoses and treatment recommendations said about
[her] clinical abilities and professionalism." Doc. #27 at 16.
To prevail on her claims, plaintiff would have to show that Yale
had no "discernible rational basis" to deny plaintiff
reappointment. Doe v. Wesleyan Univ., No. 3:19CV01519(JBA), 2021
WL 664010, at *11 (D. Conn. Feb. 19, 2021) (emphasis in
original).

In sum, plaintiff has failed to adequately allege the
existence of an implied contract because she has not alleged
facts which, if proven, would demonstrate that Yale undertook a
contractual commitment to reappoint plaintiff even if it found
that plaintiff was no longer qualified for the position, based

at least in part on public statements she made. Consequently, plaintiff's claim for breach of contract is dismissed.

**B.    The Implied Covenant of Good Faith and Fair Dealing**

Plaintiff claims that Yale breached the implied covenant of good faith and fair dealing because it "did not act in good faith when it deprived Dr. Lee of her right to academic freedom and/or the rights and guarantees provided by the Faculty Handbook, policy statements, guidance, regulations and rules applicable to her faculty appointment, thereby depriving Dr. Lee of the benefit of the contract." Doc. #27 at 19.

Defendant moves to dismiss plaintiff's claim for breach of the implied covenant of good faith and fair dealing, arguing: (1) "Because Plaintiff's breach of contract claim fails, her breach of the implied covenant of good faith and fair dealing claim also fails[,]" Doc. #32-1 at 33 (citation and quotation marks omitted); and (2) plaintiff "has not plausibly alleged bad faith." Id. at 34. The Court need not reach defendants' bad faith argument, because it agrees that the dismissal of the breach of contract claim dictates dismissal of the implied covenant claim.

Under Connecticut law, the "duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. In other words, every contract carries an implied duty requiring that neither party do anything that will injure

the right of the other to receive the benefits of the
agreement." Capstone Bldg. Corp. v. Am. Motorists Ins. Co., 67
A.3d 961, 986 (Conn. 2013) (citation and quotation marks
omitted). "[T]he existence of a contract between the parties is
a necessary antecedent to any claim of breach of the duty of
good faith and fair dealing." Hoskins v. Titan Value Equities
Grp., Inc., 749 A.2d 1144, 1146 (Conn. 2000); see also Valls v.
Allstate Ins. Co., No. 3:16CV01310(VAB), 2017 WL 4286301, at *5
(D. Conn. Sept. 27, 2017), aff'd, 919 F.3d 739 (2d Cir. 2019)
(Where a plaintiff has "not plead a plausible claim for breach
of contract, their claim for breach of the implied covenant of
good faith and fair dealing also fails.").

    As discussed above, plaintiff has failed to adequately
allege the existence of an implied contract between the parties.
Dismissal of the breach of contract claim requires dismissal of
the implied covenant claim that relies upon it. See, e.g.,
Lawrence v. Richman Grp. of Conn., LLC, 407 F. Supp. 2d 385, 391
(D. Conn. 2005). Accordingly, plaintiff's claim for breach of
the implied covenant of good faith and fair dealing is
dismissed.

    C.   **Section 31-51q**

    Plaintiff has failed to state a claim under Connecticut
General Statutes Section 31-51q. This statute provides, in part:

    Any employer ... who subjects any employee to discipline

~ 33 ~

> or discharge on account of the exercise by such employee
> of rights guaranteed by the first amendment to the United
> States Constitution or section 3, 4 or 14 of article
> first of the Constitution of the state, provided such
> activity does not substantially or materially interfere
> with the employee's bona fide job performance or the
> working relationship between the employee and the
> employer, shall be liable to such employee for damages
> caused by such discipline or discharge[.]

Conn. Gen. Stat. §31-51q (superseded effective July 1, 2022).[7]

Plaintiff alleges that Yale's "termination of Dr. Lee's faculty appointment on account of Dr. Lee exercising rights guaranteed by the first amendment to the United States Constitution or section 3, 4, or 14 of article first of the Connecticut Constitution violated Conn. Gen. Stat. §31-51q." Doc. #27 at 20.

Defendant moves to dismiss this claim, arguing that: (1) plaintiff "Has Not Alleged an Employment Relationship Within The Meaning of §31-51q[,]" Doc. #32-1 at 36; (2) plaintiff "Has Not

---

[7] This statute has recently been amended by Public Act No. 22-24, which took effect on July 1, 2022. The amendment largely consists of additions to the language of §31-51q, and provides employees with a remedy if they have been disciplined or discharged based upon the "refusal to (A) attend an employer-sponsored meeting with the employer or its agent, representative or designee, the primary purpose of which is to communicate the employer's opinion concerning religious or political matters, or (B) listen to speech or view communications, the primary purpose of which is to communicate the employer's opinion concerning religious or political matters[.]" Conn. Gen. Stat. §31-51q(b). The Court finds that the amendments do not impact the analysis of the pending motion, and relies upon the version of the statute that was in effect when the events underlying the Amended Complaint occurred, and when this action was filed.

Alleged a 'Discipline or Discharge' Within the Meaning of §31-51q[,]" id. at 40; and (3) "Section 31-51q Does Not and Cannot Limit a University's First Amendment Rights." Id. at 46. Because the Court finds that plaintiff's failure to allege an employment relationship is dispositive to her claim, it does not reach defendant's remaining grounds for dismissal.

"[A]n employer-employee relationship is required to establish standing" under Section 31-51q. Varley v. First Student, Inc., 119 A.3d 643, 652 (Conn. App. 2015) (citation and quotation marks omitted). The term "employee" is undefined in Section 31-51q. "Generally, when a statutory term is not defined, [the Court] presumes that it was intended to have its ordinary meaning as expressed in standard dictionaries." State v. Wright, 135 A.3d 1, 16 (Conn. 2016).

The parties advance competing definitions of the term "employee." Relying upon the Connecticut Appellate Court's interpretation of the term "employer" under Section 31-51q, defendant asserts: "As the Connecticut Appellate Court found in Varley, an 'employer' within the meaning of Section 31-51q is 'one for whom employees work and who pays their wages or salaries.'" Doc. #32-1 at 36 (quoting Varley, 119 A.3d at 653). Based on this holding, defendant contends that "an employee is necessarily someone who works for an employer and is paid a wage or salary." Doc. #32-1 at 36.

Plaintiff relies on Black's Law Dictionary, which defines an employee as "[s]omeone who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of the work performance." Doc. #35 at 16 (citation and quotation marks omitted).[8]

The only published Connecticut case law interpreting the term "employee" under Section 31-51q does not address the term's dictionary definition. See Young v. City of Bridgeport, 42 A.3d 514 (Conn. App. 2012). Rather, when determining whether the plaintiff was an "employee" under Section 31-51q, the Connecticut Appellate Court utilized the so-called "control test." Id. at 519. There, the court held:

> The legal incidents of the employer-employee relationship, on the one hand, and the employer-independent contractor relationship, on the other, are well established. An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as

---

[8] The Court notes that Black's Law Dictionary defines the verb "hire" as follows: "To engage the labor or services of another for wages or other payment." Black's Law Dictionary (11th ed. 2019) (emphasis added). Thus, the definition of "employee" relied upon by plaintiff could be read as: "Someone who works in the service of another person (the employer) under an express or implied contract for wages or other payment, under which the employer has the right to control the details of the work performance." That definition defeats plaintiff's claim, because (1) there was no contract here and (2) plaintiff did not receive wages or other payment.

> to the result of his work. The fundamental distinction
> between an employee and an independent contractor
> depends upon the existence or nonexistence of the right
> to control the means and methods of work. It is not the
> fact of actual interference with the control, but the
> right to interfere, that makes the difference between an
> independent contractor and a servant or agent.

Id. at 520 (citation and quotation marks omitted).

Here, however, the question is not whether plaintiff was

hired as an independent contractor or an employee. Rather, the

question is whether plaintiff was hired at all. Therefore, the

"control test" utilized by the Court in Young is not terribly

helpful. More useful guidance can be drawn from the Connecticut

Supreme Court's decision in Comm'n on Hum. Rts. & Opportunities

v. Echo Hose Ambulance, 140 A.3d 190, 191 (Conn. 2016). There,

the Connecticut Supreme Court was "called upon to decide what

test should be applied to determine whether an unpaid volunteer

is an 'employee' for purposes of the Connecticut Fair Employment

Practices Act (CFEPA)[.]" Id.

In making that determination, the Court did not focus on

the dictionary meaning of the term "employee." Instead, the

Court evaluated "whether a volunteer must satisfy the

predominant 'remuneration test' used to resolve similar federal

causes of action or Connecticut's common-law 'right to control'

test." Id. As described above, "[t]he right to control test is

based on the common law of agency, which considers various

factors to determine the hiring party's right to control the

manner and means by which the product is accomplished by the

hired party." Id. at 193 (citation and quotation marks omitted)

(emphasis in original).

> The remuneration test arose to address circumstances in
> which, in contrast to the employee versus independent
> contractor situation, it was not clear that the putative
> employee had been "hired" in the first instance, and
> accordingly, approximated the conventional master-
> servant relationship. The remuneration test instructs
> courts to conduct a [two step] inquiry by requiring that
> a volunteer first show remuneration as a threshold
> matter before proceeding to the second step -- analyzing
> the putative employment relationship under the [common-
> law] agency test. Remuneration may consist of either
> direct compensation, such as a salary or wages, or
> indirect benefits that are not merely incidental to the
> activity performed.

Id. at 193-94 (citation and quotation marks omitted).

    After examining state and federal case law, as well as

CFEPA's legislative history, the Court concluded that the

remuneration test applies when determining whether a volunteer

is an employee under CFEPA because it "provides a threshold step

to resolve the factual premise that the right to control test

assumes -- a hiring party and a hired party." Id. at 194.

Similarly, here, the question is whether plaintiff "had been

hired in the first instance[.]" Id. at 193 (citation and

quotation marks omitted). Consequently, the Court looks to the

remuneration test to determine whether plaintiff was an employee

under Section 31-51q.

    Under the remuneration test, the Court must "conduct a two

step inquiry by requiring that a volunteer first show
remuneration as a threshold matter before proceeding to the
second step -- analyzing the putative employment relationship
under the common-law agency test." Id. at 194. The Court finds
that plaintiff has failed to allege facts satisfying the first
step of this inquiry.

To adequately allege remuneration, a plaintiff must allege
"either direct compensation, such as salary or wages, or
indirect benefits that are not merely incidental to the activity
performed." Id. (citation and quotation marks omitted). As the
Connecticut Appellate Court has explained, such indirect
benefits include "health insurance, vacation, sick pay, a
disability pension, survivors' benefits, group life insurance,
scholarships for dependents upon death, or other indirect but
significant remuneration." Comm'n on Hum. Rts. & Opportunities
v. Echo Hose Ambulance, 113 A.3d 463, 471 (Conn. App. 2015)
(citation and quotation marks omitted), aff'd, 140 A.3d 190
(2016).

Plaintiff concedes that she "did not receive traditional
compensation" from Yale. Doc. #35 at 20. Nevertheless, plaintiff
contends that her "relationship with Defendant yielded
substantial tangible and intangible benefits for both parties."
Id. Plaintiff asserts that she "was given access to the
university's libraries, subscription-based research materials,

office space, [and] the university's facilities." Id. at 22.
She also contends that she was "covered under the Defendant's
malpractice insurance[,]" id., for "her forensic consultations."
Doc. #27 at 4.

These alleged benefits supplied by Yale are insufficient to
satisfy the remuneration test. "Unlike a salary, vacation, sick
pay, or benefits such as health insurance, disability insurance,
life insurance, death benefits, and retirement pension, all of
which primarily benefit the employee independently of the
employer, the benefits put forward by [plaintiff] ... , were
merely incidental to the administration of the [defendant's]
programs for the benefit of [Yale] at large." York v. Ass'n of
Bar of City of New York, 286 F.3d 122, 126 (2d Cir. 2002).

Plaintiff further alleges that "[t]hrough her association
with [Yale], she secured prestigious appointments with domestic
and international organizations, received research grants based
on her academic affiliation and developed and implemented
programs within the Yale School of Medicine." Doc. #35 at 22;
see also Doc. #27 at 5. As a result of these grants and
appointments, plaintiff alleges that "[a] majority of Dr. Lee's
income was derived from her faculty appointment, affiliation,
and relationship with Yale." Doc. #27 at 7. Plaintiff does not

allege, however, that this income was received from Yale.[9] Absent

such an allegation, plaintiff has alleged only that she received

such grants and appointments because Yale provided her with the

"vague benefit" of increased "name recognition[.]" Hughes v.

Twenty-First Century Fox, Inc., 304 F. Supp. 3d 429, 444

(S.D.N.Y. 2018). Such a benefit is insufficient to satisfy the

remuneration requirement. See id.

Plaintiff has thus failed to allege that she received

benefits from Yale sufficient to satisfy the remuneration test.

As a result, plaintiff has not adequately alleged that she is an

employee within the meaning of Section 31-51q. Accordingly,

Plaintiff's claim under Section 31-51q is dismissed.

### D.   Negligent Misrepresentation

Plaintiff fails to state a claim for negligent

misrepresentation. "[A]n action for negligent misrepresentation

requires the plaintiff to establish (1) that the defendant made

a misrepresentation of fact (2) that the defendant knew or

---

[9] Plaintiff's failure to allege that she received these benefits
from Yale distinguishes this case from Pemrick, upon which
plaintiff relies to argue that she has satisfied the
remuneration standard. See Pemrick v. Stracher, 67 F. Supp. 2d
149 (E.D.N.Y. 1999). There, the defendant and the third-party
foundation that compensated plaintiff were "joint, integrated
employers for purposes of Title VII," and therefore both were
"properly deemed [plaintiff's] employer for purposes of this
action." Id. at 165. Plaintiff does not allege that any of the
parties who provided her income were joint employers with Yale.

should have known was false, (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." Coppola Const. Co. v. Hoffman Enter. Ltd. P'ship, 71 A.3d 480, 487 (Conn. 2013) (citations and quotation marks omitted).

"Courts are deeply split within this District and elsewhere" regarding whether Rule 9(b)'s heightened pleading requirements "appl[y] to negligent misrepresentation claims." ARMOUR Cap. Mgmt. LP v. SS&C Techs., Inc., No. 3:17CV00790(JAM), 2018 WL 1368908, at *6 (D. Conn. Mar. 16, 2018). This Court need not determine whether Rule 9(b) applies to plaintiff's claim, however, because plaintiff has failed to state a claim even under Rule 8's less stringent pleading requirements.

Plaintiff rests her negligent misrepresentation claim on defendant's alleged failure to "abide by its own terms relating to academic freedom and freedom of expression when it terminated Dr. Lee's faculty appointment for pretextual reasons." Doc. #27 at 21. Specifically, plaintiff alleges that "the representations made in the Handbook, as well as its policy statements, guidance, regulations, and rules, were false, and they were known or should have been known to be false by Yale." Id. Plaintiff dedicates slightly more than one page of her opposition memorandum to this count. Plaintiff argues:

Plaintiff has alleged that statements were made to her

> in various forms providing assurances of her faculty
> appointment, that they were false or the Defendant or
> its agents should have known were false, reasonable
> reliance and damage. There are factual issues which
> cannot decided at this juncture.
>
> Furthermore, "a promissory representation (i.e., a
> statement of future intention) is actionable on a theory
> of fraudulent misrepresentation if, at the time the
> statement is made, the speaker did not intend to honor
> the promise."

Doc. #35 at 14 (sic) (citations omitted).

Plaintiff fails to meet the first element of a negligent misrepresentation claim: that "defendant made a misrepresentation of fact[.]" Coppola Const. Co., 71 A.3d at 487 (citations and quotation marks omitted). Plaintiff points to no specific statement of fact that was false. Plaintiff asserts that Yale made "statements ... to her in various forms providing assurances of faculty appointment[,]" Doc. #35 at 14, and that Yale did "did not abide by its own terms relating to academic freedom and freedom of expression[.]" Doc. #27 at 21. The actual statements alleged in the Amended Complaint amount to nothing more than general statements of university policy, see id. at 14-15, ¶49, and three positive comments regarding plaintiff's work, see id. at 12, ¶¶38, 39, 40.

Plaintiff has failed to allege any false statements of fact, and has failed to point to any specific "representations [that] contained false information." D'Ulisse-Cupo v. Bd. of Directors of Notre Dame High Sch., 520 A.2d 217, 223 (Conn.

1987). Absent an allegation that Yale made such a specific false representation, plaintiff's claim amounts to a "naked assertion[]" that defendant misrepresented some unspecified fact in some unspecified statement. Umbach v. Carrington Inv. Partners (US), LP, No. 08CV00484(EBB), 2013 WL 12288988, at *10 (D. Conn. July 19, 2013). Such an assertion is insufficient to survive a motion to dismiss. See Allen v. Verizon Wireless, No. 3:12CV00482(JCH), 2013 WL 2467923, at *6 (D. Conn. June 6, 2013) (dismissing negligent misrepresentation claim where plaintiff failed to "allege any specific fact that [defendant] purportedly misrepresented").

Moreover, even if plaintiff had adequately asserted a misrepresentation of fact, she has not alleged facts which, if taken as true, would demonstrate that Yale "knew, or should have known, [its] statements were untrue at the time they were made." Bellsite Dev., LLC v. Town of Monroe, 122 A.3d 640, 654 (Conn. App. 2015) (emphasis in original). Plaintiff's claim that Yale made statements it "kn[ew] or should have been known to be false" is a mere legal conclusion. Doc. #27 at 21. To survive a motion to dismiss, it is not enough to state, in conclusory fashion, that defendant knew or should have known its statements were false when such statements were made. Rather, plaintiff must allege facts which, if true, would bear that conclusion out. See Doe, 2021 WL 664010, at *12 (dismissing negligent

~ 44 ~

misrepresentation claim where "Plaintiff makes no claims that
[defendant] knew or should have known that its Handbook would
not be honored by its own officials at the time it was issued or
that [defendant] knew or should have known that the promises
were false at the time it wrote and published Handbook[]").

In considering a motion to dismiss, the Court is "not
required to credit conclusory allegations or legal conclusions
couched as factual allegations." Dane v. UnitedHealthcare Ins.
Co., 974 F.3d 183, 188 (2d Cir. 2020) (citation and quotation
marks omitted). Plaintiff has not alleged any facts that would
support her conclusory assertion that Yale knew or should have
known that its statements were false at the time they were made.
See Sturm v. Harb Dev., LLC, 2 A.3d 859, 873 (Conn. 2010)
(dismissing negligent misrepresentation claim where plaintiff
"neither alleges false statements made by the defendant nor the
defendant's knowledge or duty to know the falsity of those
statements"). Accordingly, plaintiff's claim for negligent
misrepresentation is dismissed.

## IV.   Conclusion

For the reasons set forth herein, defendant's Motion to
Dismiss [**Doc. #32**] is **GRANTED**.

The Clerk shall close this case.

It is so ordered at Bridgeport, Connecticut, this 30th day

of August, 2022.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**BANDY LEE**
      Plaintiff
v.

**YALE UNIVERSITY**
      Defendant

:
:
:
:
:
:
:

No. 3:21cv389(SALM)

**JUDGMENT**

This matter came up for consideration on Defendant Yale University's Motion to

Dismiss **[Doc. #32]**, before the Honorable Sarah A. L. Merriam, United States District

Judge. On August 30, 2022, the Court, having considered the full record of the case,

including the applicable principles of law, entered a Ruling GRANTING the Motion to

Dismiss, and the Clerk of the Court was directed to close the case. It is hereby;

ORDERED, ADJUDGED and DECREED that judgment shall enter in favor of

Defendant Yale University against Plaintiff Bandy Lee, and this case shall be closed.

Dated at Bridgeport, Connecticut, this 30th day of August, 2022.

DINAH MILTON KINNEY, Clerk


By: _____/s/_____
     Andrew Caffrey
     Deputy Clerk

EOD: 8/30/2022

### Addendum "B" to Form C – Proposed Issues on Appeal

(1) Whether the District Court erred by not accepting Plaintiff's allegations in the Amended Complaint as true, by accepting or finding facts in favor of Defendant and against Plaintiff, by not drawing inferences from those allegations in the light most favorable to Plaintiff, and by not construing the complaint liberally.

Standard of Review:

*De novo. Roth v. Jennings*, 489 F.3d 499, 509-10 (2d Cir. 2007); *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

(2) In deciding Plaintiff's claim for breach of implied contract, whether the District Court erred in concluding that Plaintiff failed to state a claim.

Standard of Review:

*De novo. Roth v. Jennings*, 489 F.3d 499, 509-10 (2d Cir. 2007).

(3) In deciding Plaintiff's claim for breach of implied contract, whether the District Court erred by incorrectly construing Plaintiff's claim in a manner that deviated from the claim that Plaintiff alleged in her Amended Complaint, including by framing Plaintiff's claim as requiring a disregard for whether Defendant found that she was no longer qualified for her position.

Standard of Review:

*De novo. Roth v. Jennings*, 489 F.3d 499, 509-10 (2d Cir. 2007).

(4) In deciding Plaintiff's claim for breach of implied contract, whether the District Court erred by concluding that the absence of a contractual guarantee of continued reappointment constituted a basis for dismissing Plaintiff's claim.

Standard of Review:

*De novo. Roth v. Jennings*, 489 F.3d 499, 509-10 (2d Cir. 2007).

(5) In deciding Plaintiff's claim for breach of contract, whether the District Court erred by considering the content of documents outside of the pleadings for the truth of what was stated in the documents, and not merely to verify what was stated in the documents.

Standard of Review:

*De novo. Roth v. Jennings*, 489 F.3d 499, 511 (2d Cir. 2007).

(6) Whether the District Court erred in dismissing Plaintiff's claim for breach of the covenant of good faith and fair dealing.

Standard of Review:

*De novo. Roth v. Jennings*, 489 F.3d 499, 509-10 (2d Cir. 2007).

(7) Whether the District Court erred in dismissing Plaintiff's claim under Conn. Gen. Stat. § 31-51q on the grounds that Plaintiff failed to sufficiently allege that she was an employee for purposes of the statute.

Standard of Review:

*De novo. Roth v. Jennings*, 489 F.3d 499, 509-10 (2d Cir. 2007).

(8) Whether the District Court erred by applying an incorrect definition of "employee" for purposes of Plaintiff's claim under Conn. Gen. Stat. § 31-51q.

Standard of Review:

*De novo. Roth v. Jennings*, 489 F.3d 499, 509-10 (2d Cir. 2007).