22-2634
*Lee v. Yale Univ.*

**MANDATE**

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of June, two thousand twenty-three.

PRESENT:

>ROSEMARY S. POOLER,
>RICHARD J. SULLIVAN,
>BETH ROBINSON,
>>*Circuit Judges.*

_____

BANDY LEE,

>*Plaintiff-Appellant*,

>v.  No. 22-2634

YALE UNIVERSITY,

>*Defendant-Appellee.*\*

_____

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

**MANDATE ISSUED ON 07/11/2023**

| | |
|---|---|
| **For Plaintiff-Appellant:** | TODD STEIGMAN, Madsen, Prestley & Parenteau, LLC, Hartford, CT. |
| **For Defendant-Appellee:** | JONATHAN M. FREIMAN, Wiggin and Dana LLP, New Haven, CT (Anjali S. Dalal, Wiggin and Dana LLP, New York, NY, *on the brief*). |

Appeal from a judgment of the United States District Court for the District of Connecticut (Sarah A. L. Merriam, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Bandy Lee appeals from the district court's order dismissing, pursuant to Federal Rule of Civil Procedure 12(b)(6), her complaint against Yale University following its 2020 decision to not reappoint Lee as a voluntary Assistant Clinical Professor of psychiatry at the Yale School of Medicine after she publicly suggested that a prominent supporter of former President Donald Trump had a "shared psychosis" with the former president and had "wholly taken on [his] symptoms by contagion." J. App'x at 36.[1] On appeal, Lee contends that the district court

---

[1] We refer to Yale's decision as a nonrenewal of Lee's appointment, rather than as a termination, since a document the district court recognized was integral to the complaint makes clear that Lee's term was already set to expire in 2020 – a fact Lee herself accepts on appeal.

erred in determining that she had failed to state a claim (1) for breach of contract and for breach of the implied covenant of good faith and fair dealing under Connecticut common law and (2) for a violation of Conn. Gen. Stat. § 31-51q, which bars employers from disciplining or discharging employees based on their exercise of First Amendment rights. We review the district court's dismissal de novo. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," drawing all reasonable inferences in the plaintiff's favor (internal quotation marks omitted)). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

**I.    Breach of Contract and the Duty of Good Faith and Fair Dealing**

As explained in the thorough and well-reasoned opinion of the district court, Lee's complaint failed to state a claim for both breach of contract and breach of the implied covenant of good faith and fair dealing. Under Connecticut law, "[t]he elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn.

3

282, 291 (2014); *see also Coelho v. Posi-Seal Int'l, Inc.*, 208 Conn. 106, 111 (1988) ("A contract implied in fact, like an express contract, depends on actual agreement." (internal quotation marks omitted)). Relatedly, *if* a contract is formed, a plaintiff may also be able to assert a claim for breach of the implied covenant of good faith and fair dealing, as "every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 794 (2013) (internal quotation marks omitted); *see also Hoskins v. Titan Value Equities Grp., Inc.*, 252 Conn. 789, 793 (2000) ("[T]he existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing.").

Here, Lee's claims for breach of contract and breach of the implied covenant of good faith and fair dealing both fail because she has not adequately alleged a promise that Yale would not decline to renew her appointment on account of her public statements. In her opening brief in this Court, Lee argues that an express or implied contract was formed, primarily through Yale's Faculty Handbook and a Yale committee report referenced therein (the "Woodward Report"), in which Yale promised it "would not consider or rely upon [Lee's] exercise of freedom of

4

expression and academic freedom when deciding whether to . . . renew [her] faculty appointment." *E.g.*, Lee Br. at 28. But the statements that Lee relies on as the genesis for this alleged contract reduce merely to generalized support for academic freedom. *E.g.*, J. App'x at 79 (Yale's Faculty Handbook quoting the Woodward Report as stating that "a free interchange of ideas is necessary not only within [a university's] walls but with the world beyond as well" and that "a university must do everything possible to ensure within it the fullest degree of intellectual freedom"). Because those statements were not "sufficiently definite to manifest a present intention on the part of [Yale] to undertake immediate contractual obligations to [Lee]" concerning what it could or could not consider when making a reappointment decision, they are not adequate to plausibly allege the formation of a contract of the type Lee asserts. *Burnham v. Karl & Gelb, P.C.*, 50 Conn. App. 385, 389 (1998) (internal quotation marks omitted); *see also Christensen v. Bic Corp.*, 18 Conn. App. 451, 458 (1989) ("A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties.").[2]

---

[2] Lee suggests in her reply brief that the relevant contractual provision that Yale breached was its promise in its Faculty Handbook to make decisions on reappointment based on "the exercise of professional and scholarly judgment by competent University authorities." J. App'x at 41, 93. At

Each of the cases that Lee relies on in urging the opposite conclusion are materially distinguishable. For example, in *Craine v. Trinity College*, the Connecticut Supreme Court affirmed a jury verdict in favor of a professor who was denied tenure, finding sufficient evidence from which the jury could have concluded that the college breached contractual commitments it had made in a faculty manual, such as to "make efforts to hire and promote previously underutilized and excluded groups" and to provide "a fair and unbiased review" of a "candidate's scholarly activities, particularly when these are in new or non-traditional fields." 259 Conn. 625, 655–60 (2002) (internal quotation marks omitted); *see also, e.g.*, *Byrne v. Yale Univ., Inc.*, 450 F. Supp. 3d 105, 124 (D. Conn. 2020) (allowing a Yale faculty member's breach-of-contract claim to go to trial where two professors with arguable conflicts of interest had participated in her tenure vote and the Faculty Handbook specifically provided that "[a] member of the faculty who has a personal or professional conflict of interest concerning an individual on whom a vote is taken must absent himself or herself from all discussions and all votes taken on that individual" (emphasis omitted)). But the commitments identified in *Craine* and *Byrne* are significantly more definite than

---

minimum, Lee forfeited this argument by failing to raise it in her opening brief, and we decline to exercise our discretion to consider it. *See Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009).

6

the ones that Lee seeks to enforce here. Similarly, *Hartwig v. Albertus Magnus College* – on which Lee heavily relies – is clearly inapposite. 93 F. Supp. 2d 200 (D. Conn. 2000). There, although the district court allowed a claim very similar to Lee's to go forward to trial, it notably did so without facing an argument from the defendant that a sufficiently definite contract had not been formed. *See id.* at 203, 217–18. Accordingly, we have no hesitation affirming the district court's dismissal of Lee's contract-based claims.[3]

**II.     Conn. Gen. Stat. § 31-51q**

The district court also correctly concluded that Lee's complaint failed to state a claim under Conn. Gen. Stat. § 31-51q. Section 31-51q provides that "[a]n employer . . . who subjects any *employee* to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4[,] or 14 of article first of the Constitution of [Connecticut] . . . shall be liable to such *employee* for damages caused by such

---

[3] Lee also critiques various aspects of the district court's order, for example asserting that the court mischaracterized her contract claim and made improper factual findings at the motion-to-dismiss stage. Because none of the purported errors were central to the district court's reasoning, and because we review the district court's dismissal de novo, we decline to disturb the district court's Rule 12(b)(6) dismissal on those grounds.

7

discipline or discharge[.]" Conn. Gen. Stat. § 31-51q (2020) (emphasis added).[4]

Interpreting this statute, the district court determined that, in order to be considered an employee within the meaning of section 31-51q, a plaintiff must satisfy two tests: (1) the threshold remuneration test, showing that she received "either direct compensation, such as salary or wages, or indirect benefits that are not merely incidental to the activity performed," and (2) the common-law control test, showing that the employer had the "right to control the manner and means upon which the product [was] accomplished by the hired party." Sp. App'x at 36–39 (quoting *Comm'n on Human Rts. & Opportunities v. Echo Hose Ambulance*, 322 Conn. 154, 161–62 (2016) ("*Echo Hose II*"), *aff'g* 156 Conn. App. 239 (2015) ("*Echo Hose I*")). Applying that framework, the district court found that Lee's complaint did not adequately allege remuneration, and thus did not adequately allege that she was an employee under section 31-51q. We agree.

As an initial matter, we endorse the district court's interpretation of section 31-51q – and specifically its determination that, for a volunteer like Lee to be

---

[4] Although section 31-51q was amended in 2022, like the district court, we apply the statutory provision in effect when the events underlying the action occurred. Lee forfeited, both here and below, any argument that the 2022 version should be retroactively applied, or that doing so would materially affect the outcome of this case. *See Doe v. Trump Corp.*, 6 F.4th 400, 410 (2d Cir. 2021); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998); *see also generally D'Eramo v. Smith*, 273 Conn. 610, 619–25 (2005) (surveying Connecticut case law on the retroactive application of statutes).

considered an employee, it is not sufficient to merely satisfy the control test. The term "employee" is not defined in section 31-51q, nor have Connecticut state courts directly addressed what it means to be an employee in the context of section 31-51q when the plaintiff may not have been compensated. *See Varley v. First Student, Inc.*, 158 Conn. App. 482, 498–501 (2015) (defining the term "employer" in section 31-51q to mean "one who employs the services of others; one for whom employees work and who pays their wages or salaries" (internal quotation marks and alterations omitted)); *Young v. City of Bridgeport*, 135 Conn. App. 699, 706–10 (2012) (applying the control test to determine whether the plaintiff was an independent contractor or an employee under section 31-51q). That said, facing the exact same question in the context of an analogous statute – the Connecticut Fair Employment Practices Act (the "CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq.* – the Connecticut Supreme Court has clearly explained that for a volunteer to be considered an employee, she must meet *both* the remuneration *and* control tests. *See Echo Hose II*, 322 Conn. at 159–66. The same should therefore be true for section 31-51q.

Taking issue with this interpretation, Lee primarily asserts that "[t]he meaning of 'employee' in [section] 31-51q should be consistent with the definition

9

of employee found in Conn. Gen. Stat. § 31-51m, and not controlled by the remuneration test adopted for [the] CFEPA." Lee Br. at 49–50. But Lee's efforts to distance section 31-51q from the CFEPA and to instead tie it to section 31-51m are unpersuasive. *First*, there is no reason to read the term "employee" in section 31-51q differently from the term "employee" in the CFEPA, a statutory regime that – much like section 31-51q – proscribes retaliation in the workplace but provides no meaningful definition of what it means to be a protected employee. *See* Conn. Gen. Stat. §§ 46a-51(9), 46a-60. *Second*, even if the meaning the term "employee" in section 31-51q could be read to mirror that of section 31-51m, *see, e.g.*, *Cotto v. United Techs. Corp.*, 251 Conn. 1, 13–14 (1999); *Varley*, 158 Conn. App. at 499, that provision in no way suggests that a volunteer plaintiff is absolved from meeting both the remuneration and control tests, *see* Conn. Gen. Stat. § 31-51m(a)(3) (defining "employee" as "any person engaged in service to an employer in a business of his employer"); *Young*, 135 Conn. App. at 706–10 (applying only the control test under section 31-51m, but doing so in the inapposite

10

situation where the key question was whether the plaintiff was an employee or independent contractor).[5]

With the proper legal framework for section 31-51q settled, we now apply the relevant principles to Lee's complaint. In her pleadings, Lee alleges that, in exchange for her services as an unpaid voluntary Assistant Clinical Professor, she received from Yale "office space, facilities, libraries, subscription-based access to research databases and journal articles, statisticians, laboratories, statistical programs and software, IT and technology services, computer programs and software, media studios (radio and television), and campus transportation, all of which she used for her research, writing, to assist with her speaking engagements, advocacy[,] and other professional obligations." J. App'x at 31; *see also id.* (alleging that "in connection with [Lee's] faculty appointment, she was covered by Yale's professional malpractice insurance policy for her forensic consultations"). But ultimately these forms of indirect remuneration are insufficient, as they amount to benefits that are "merely incidental" to the activities Lee was performing for Yale,

---

[5] Lee also briefly contends that an interpretation of section 31-51q that incorporates the remuneration test is inconsistent with dictionary definitions of the term "employee," but Lee is mistaken for the reasons already explained by the district court. *See* Sp. App'x at 36 & n.8 (showing that even Lee's favored definition requires that an employee "work[] in the service of another person (the employer) under an express or implied contract *for wages or other payment*, under which the employer has the right to control the details of the work performance" (internal quotation marks omitted and emphasis added)).

11

rather than benefits that would have profited Lee independent of Yale, such as health insurance, life insurance, or a retirement pension. *Echo Hose II*, 322 Conn. at 161–62 (internal quotation marks omitted); *see also Echo Hose I*, 156 Conn. App. at 251–52; *York v. Ass'n of Bar of N.Y.*, 286 F.3d 122, 126 (2d Cir. 2002).[6] As a result, we hold that the district court properly dismissed Lee's claim that Yale violated Conn. Gen. Stat. § 31-51q.

\*   \*   \*

We have considered Lee's remaining arguments and found them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[6] Lee suggests for the first time in her reply brief that she did in fact participate in a Yale-sponsored retirement plan. We decline to consider whether this contention would alter the above analysis, as it was not included in Lee's complaint, her opposition to Yale's motion to dismiss below, or her opening brief here. *See Doe*, 6 F.4th at 410; *Gross*, 585 F.3d at 95.